**UNITED STATES of America, Appellee,**

v.

**W. Garland NEALY, Appellant.**

**No. 83–5045.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 10, 1984.

Decided March 12, 1984.

Robert G. Cabell, Jr., Richmond, Va., for appellant.

Mary S. Feinberg, Asst. U.S. Atty., Charleston, W.Va. (David A. Faber, U.S. Atty., Wayne A. Rich, Jr., Asst. U.S. Atty., Charleston, W.Va., on brief), for appellee.

Before WINTER, Chief Judge, and RUSSELL and MURNAGHAN, Circuit Judges.

MURNAGHAN, Circuit Judge:

W. Garland Nealy, the defendant below, was convicted after a jury trial in the United States District Court for the Southern District of West Virginia on all counts of an eleven count indictment. He was sen-

tenced to serve five years in prison and pay a $10,000 fine.

Count one charged that the defendants [1] conspired to aid and assist the preparation and presentation of false tax returns in violation of 18 U.S.C. § 371. Counts two through eleven charged each of the defendants with aiding and assisting in the preparation and presentation of false and fraudulent United States Partnership Returns of Income in violation of 26 U.S.C. § 7206(2) and 18 U.S.C. § 2.

Nealy raises two grounds for reversal on appeal: (1) that he did not conspire with anyone to violate the tax laws; and (2) that he should have been acquitted because he did not actually prepare the partnerships' tax returns.

## I.

In 1976, the Internal Revenue Code permitted deductions to be taken on income tax returns for investments in coal properties. Nealy participated in a scheme to get limited partnerships to invest in coal properties that would qualify for the deduction. Nealy and his fellows greatly inflated the estimates of the amount of coal in the properties. As a consequence, ten limited partnerships deducted a total of $17,500,000 from their returns in 1976. Following discovery of the true state of affairs, $13,800,000 worth of deductions were disallowed.

Nardone had been putting together a coal tax shelter offering and told Nealy that he was interested in obtaining a coal property for tax shelter investors.

When Nealy offered for sale a seam of coal called the Sewell Lease,[2] Nardone required a report by a certified engineer stating the amount of coal reserves.

Nealy supervised the production of an engineering report that fraudulently stated that coal reserves totaled twelve million tons. The report was signed by Arthur K. Banks, a Registered Professional Engineer. An earlier report commissioned by Nealy had estimated the Sewell Lease reserves at only four million tons. The Banks report was the basis for another report, the Abrams report. The Banks and Abrams reports were then included in offering memoranda distributed to potential investors.

Nealy does not contend that his activities were beyond reproach. He only claims that he did not conspire with Nardone to violate the tax laws. Nealy claims that, if he conspired with Nardone, he did so only to cheat people of money.

It was fully established at trial that Nealy knew that the fraudulent Banks report was to be used to entice people to invest in tax shelters.[3]

## II.

The question, thus, becomes: Can a person be convicted of aiding and assisting the preparation and presentation of false tax returns if he only prepares a false report which he knows will be used to compute unjustified deductions.[4] While

---

**1.** In addition to Nealy, also charged were James C. Reed, Jr., William Nardone, and Barterline, Ltd. Reed was acquitted, and the cases against Nardone and Barterline were transferred to the United States District Court for the Eastern District of New York.

**2.** On numerous visits to the property, Nealy would readily have observed extensive, prior mining of the Sewell Lease by strip, deep and auger mining methods.

**3.** Nealy alone testified as to his claimed lack of knowledge, contradicting other witnesses.

**4.** The ground for reversal is asserted in two related ways. Nealy first contends that he could not have been convicted of conspiracy to

violate the tax laws because he did not know that his conspiracy with Nardone to fleece investors would violate the tax laws. Cf. United States v. Dumas, 688 F.2d 84 (10th Cir.1982); United States v. Gallishaw, 428 F.2d 760 (2d Cir.1970). Second, he claims that the acts performed in furtherance of the conspiracy would not, for the same reason, justify conviction. However, if the preparation of the report was sufficient to violate the tax laws, a conspiracy to prepare the report was a conspiracy to violate the tax laws.

Nealy cannot claim he was unaware that the purpose of the spurious report was to entice investors looking for tax shelters. Several witnesses testified that Nealy was aware of the report's purpose. On appeal, the evidence must

the Fourth Circuit has never addressed the issue directly, nevertheless, *United States v. Head,* 697 F.2d 1200 (4th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3113, 77 L.Ed.2d 1367 (1983), is instructive. There the district judge had dismissed at the close of the government's case-in-chief three false filing counts because Head had not actually prepared the returns. The Court, of course, could not reverse since to do so would offend the double jeopardy clause. *See Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). All the same, we noted that the district judge's ruling was "clearly contrary" to decisions by numerous circuits. 697 F.2d at 1208 n. 13.

■ The cases from other circuits all establish that a person can be convicted of aiding the filing of a false return even though he did not actually prepare it. All that is required is that he "knowingly participate in providing information that results in a materially fraudulent tax return, whether or not the taxpayer is aware of the false statements." *United States v. Siegel,* 472 F.Supp. 440, 444 (N.D.Ill.1979). The Fifth Circuit said in dicta that a person could be prosecuted under 26 U.S.C. § 7206(2) where the person supplied taxpayers or their accountants with inflated appraisals of yachts donated to universities which were then used to compute charitable deductions on the taxpayers' returns. *United States v. Wolfson,* 573 F.2d 216, 225 (5th Cir.1978). The Ninth Circuit affirmed convictions under 26 U.S.C. § 7206(2) where the defendant backdated domestic beaver purchase contracts knowing the false information would be used in the preparation of tax returns. *United States v. Crum,* 529 F.2d 1380, 1382–83 (9th Cir.1976); *see also United States v. Greger,* 716 F.2d 1275, 1276–77 (9th Cir. 1983). The Eleventh Circuit affirmed convictions under 26 U.S.C. § 7206(2) of defendants who claimed payoffs to union officials were "commissions" or "repairs" in corporate records which were later used in the preparation of tax returns. *United States v. Kopituk,* 690 F.2d 1289, 1333 (11th Cir.1982).

We are satisfied that the interpretations and applications of the statute made by our sister circuits comport with the clear facial intent of the statute to punish not only persons who present false returns, but also to punish persons who knowingly cause false returns to be filed.

### III.

Accordingly, the judgment of the district court is

AFFIRMED.

---

be viewed in the light most favorable to the government. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).