UNITED STATES of America, Plaintiff,

v.

Michael KRAUSE, Defendant.

No. CR–91–195 (ADS).

United States District Court,
E.D. New York.

March 24, 1992.

Andrew J. Maloney, U.S. Atty., E.D.N.Y. by Jeffrey Toobin, Brooklyn, N.Y., for the Government.

Michael Krause, pro se.

Paul P. Rinaldo, Forest Hills, N.Y., for defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

The issue before the Court is one of apparent first impression in this circuit. A tax protester filed income tax forms seeking a refund, setting forth huge sums of money as his earnings, which sums were obviously fictitious. There was no tax evasion, no tax loss and no false tax credits involved. No one at the Internal Revenue Service ("IRS") seriously considered making any refunds based on these outrageous figures, although the returns were designed to, and did, harass and impede IRS employees.

Query, should the defendant's sentence be enhanced by the amounts of these fictional sums?

## BACKGROUND

The defendant, Michael Krause ("Krause" or the defendant) was convicted by a jury on all counts of a six-count indictment on September 24, 1991. Count one of the indictment charged that on or about April 15, 1990, Krause knowingly and willfully made and subscribed an Individual Income Tax Return, Form 1040 (the "Return" or "Form 1040") for the year 1989, which was verified and made under penalty of perjury. The indictment charged that Krause made the Return knowing that it was not true and correct, in that Krause listed earnings of $32,595,126 during 1989, entitling him to a refund in the amount of $23,472,858. This count was based on a violation of 26 U.S.C. § 7206(1).

Counts two through five charged that Krause violated section 7206(1) by knowingly and willfully subscribing four Internal Revenue 1096 Forms incorrectly and falsely, stating payments of huge fictitious salaries to variously named individuals.

In the sixth count, the defendant was charged with violating 26 U.S.C. § 7212(a) in that he knowingly, willfully and corruptly endeavored to obstruct and impede the administration of the IRS by filing the four false 1096 forms as charged in counts two through five of the indictment.

It is important to note at the outset that Krause was not charged with income tax evasion or acts committed in furtherance of such evasion. Rather, to paraphrase the

defendant's legal advisor, Krause filed the above-mentioned false return and false 1096 forms as a protest, in furtherance of his ultimate goal of being treated as a non-taxpayer. The government essentially admits that Krause was in fact, a tax protester.

Krause allegedly sought such status after concluding, albeit incorrectly, that he was unjustly taxed. IRS agents confirmed that from 1982 through the present time, Krause had serious tax problems with regard to the payment of his taxes and whether his salary from Pan American World Airways was taxable income. The IRS levied on Krause's salary to collect tax monies owed and Krause vigorously objected to that action. In particular, Krause believed that the tax assessments were invalid and that everyone involved with the levy had "stolen" his property. According to the agents, Krause was given the opportunity to amicably resolve this dispute, but did not avail himself of the opportunity. Apparently, sometime during this period, the defendant began his course of conduct that resulted in the convictions at issue.

The first step that Krause undertook in his "protest" plan was to send a "notice of bill due and payable" to each target agency or individual. The evidence indicates that Krause sent such documents to at least 29 persons, including officials of the IRS, the New York State Department of Taxation and his employer, Pan American Airways. These "notices of bills due and payable" set forth the amounts the defendant claimed were due to him plus interest, legal fees, fines and penalties. The defendant "deemed" these sums due to him, as a result the target's purported violations of his civil rights.

Following the service of this "notice of bill due and payable," the defendant sent each person he targeted a form W–9, which is a request for a taxpayer identification number and certification. If that request was not complied with, and no one actually did comply with this request, he then sent a second form W–9. Following the transmission of the second form W–9, he prepared a form 1099, which stated that the recipient had, "non-employee compensation, and in very substantial amounts." He then wrote to the IRS employees who dealt with him in their official capacity. The letters were of a harassing nature, including such terms accusing the person of "theft ...,  violating my constitutional civil rights, this is your Miranda warning, you now have notice of this lien." By doing this, he created time consuming confusion for the officials involved and Internal Revenue Service itself (Tr. p. 31–32).

## THE LAW

The government contends that the Probation Department has correctly calculated Krause's sentence under section 2T1.3(a)(1) of the United States Sentencing Guidelines (the "Guidelines"). On the other hand, the defendant's legal advisor argues that a plain reading of the Guidelines and the related case law requires the application of another subdivision of the Guidelines, namely section 2T1.3(a)(2). Not surprisingly, the application of this latter subdivision would result in a substantially shorter sentence.

### A. *The Guidelines*

Section 2T1.3, the Guideline applicable to a violation of 26 U.S.C. § 7206, governs the sentencing for the commission of "Fraud and False Statements Under Penalty of Perjury" and reads as follows:

"(a) Base Offense Level:
(1) Level from § 2T4.1 (Tax Table) corresponding to the tax loss, *if the offense was committed in order to facilitate evasion of a tax;* or
(2) 6, otherwise.
For purposes of this guideline, the "tax loss" is 28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against tax. If taxpayer is a corporation, use 34 percent in lieu of 28 percent (emphasis supplied).

Application Note 4 in the commentaries with regard to the understatement of income and false tax credits, concludes with the following statement:

"Background: This guideline covers conduct that usually is analogous to tax evasion, although the elements differ. Accordingly, the offense is treated much like tax evasion" (U.S.S.G. § 2Ti.3 Application Note 4).

## B. *The Government's Contentions*

In the presentence Probation report (the "Report"), Krause's conduct is described in connection with a group of other taxpayers who allegedly sought to exact revenge against the government and to harass certain individuals who purportedly were responsible for the taxpayers' perceived problems. The Report outlines a scheme followed by taxpayers, including Krause, to harass the IRS employees and to create confusion at the IRS. The Report states that this particular scheme was generally familiar to law enforcement personnel as a nuisance device, but the individuals targeted by Krause were not acquainted with this tactic and were considerably disturbed by it. The Government argues that it is important to note that while Krause's activities may not have been taken seriously by some government personnel, the seriousness of his conduct is in no way diminished by the obvious perceptibility of his scheme.

In fact, the Report states that while the above conduct caused no audit to be undertaken, this bizarre conduct did cause expense and confusion to the IRS, and thus must be a factor taken into consideration when sentencing. The Government points out that the Report notes that the conduct directed by Krause at various individuals in furtherance of this scheme did cause some agency personnel substantial anxiety.

The government further argues that Krause's conduct has resulted in a "tax loss" under the Guidelines. The government arrives at this conclusion by determining that the entry on line 56 of Krause's 1989 Form 1040, "Federal Income Tax withheld, $32,599,808," was a "false credit against tax." This figure, the government suggests, was the defendant's calculation of the total sum of all the false forms Krause filed in violation of 26 U.S.C. § 7206(1) (counts two through five in the indictment). The Government assumes that Krause's submission of tax documents containing these entries in fact constituted a false credit claimed against tax. Therefore, according to the Government, this is the "tax loss" or false tax credit claimed by Krause. Thus, argues the Government, it was proper to apply section 2T1.3(a)(1) to determine the tax loss and its corresponding base offense level. This analysis must presuppose that Krause's filings were offenses "committed in order to facilitate evasion of a tax."

Guideline section 2T4.1, contained in Part F of the Guidelines, provides a table from which to ascertain the proper offense level for certain offenses involving fraud and deceit. There is a base offense level of six in this section. Depending on the amount of the tax loss, the table proportionally increases the offense level to reflect the magnitude of the tax loss.

If the Court were to apply to the table the amount of tax loss the government contends Krause caused by his filings, namely the sum of $32,599,808, the base level of six would swell to a total offense level of twenty-two. For a tax loss in an amount greater than $20,000,000 but less than $40,000,000, the base offense level of 6 is increased by 16 to arrive at an overall figure of 22 (*see* Guideline section 2F1.1[b][1][Q]). According to the Guidelines, this level carries an imprisonment range of between 41 and 51 months.

Cognizant that this Guideline section and its attendant analysis was designed to apply to more conventional tax frauds, the Government suggests that in the event the Court finds that this sentencing range would be unsuitable for the conduct in issue, the Court could downwardly depart pursuant to Guideline section 5K2.0. This guideline section tracks 18 U.S.C. § 3553(b), and states that a Court may depart if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described" (*id.*). The Government also cites

to *United States v. Skinner,* 946 F.2d 176 (2d Cir.1991) with regard to a downward departure in the context of an unusual case. The government reasons that the downward departure is the appropriate response when faced with an unconventional case. It presupposes that this is such a case; therefore the Court should first apply 2T1.3(a)(1) to derive a 22 level and the Court could then depart from the 22 level, if appropriate. However, the government objects to such a downward departure on the ground that the defendant's crime cost the tax and judicial system substantial expense.

### C. *The Defendant's Contentions*

On the other hand, Krause argues that the government is simply misapplying the Guidelines. He contends that the Court should disregard the government's reasoning, analysis and suggestions of downward departure because the Guidelines expressly provide for Krause's sentencing under section 2T1.3(a)(2).

The defendant points out that the government did not find or charge him with an actual "tax loss" nor did they find or charge that he took "false credits." Krause argues that it is obvious that the figures used on the 1989 Form 1040 were fictitious, based only on some personal theory of tax liability and unrelated to reality.

The defendant contends that he never acted in concert with any particular group of individuals and pursued his actions on his own. Krause also objects to the characterization of his actions as a "scheme." He maintains that there was no trickery or deceit involved in his actions. Krause further asserts that the IRS was fully aware of his dispute and position in relation to the actions which culminated in his indictment. Further, Krause notes that every step he took was obvious and on notice to the IRS. Moreover, he states that "[h]e claimed no false credits. There was no attempt to evade taxes but rather to follow through with his ultimate goal to be treated as a 'non-taxpayer'" (*see* Rinaldo letter dated Dec. 5, 1991).

Additionally, Krause contends that the numbers he used in filing the various forms in issue were based on his theory of the damages due him from the government or its personnel and was not at all based on actual taxes owed. He emphasizes that the IRS was aware of all these facts. As a result, Krause concludes that there was no possibility that, under this factual scenario, the IRS would even have actually given him a refund.

Therefore, Krause maintains that since the Government concedes that he did not seek to evade a tax and that his filings were never seriously considered by the IRS, he does not come within the letter of Guideline 2T1.3(a)(1). He states that the government did not even claim that he owed any tax based on his fictitious returns. As a result, according to Krause, this is plainly an "otherwise" situation provided for by section 2T1.3(a)(2). Accordingly, Krause claims that the proper offense level is level six, rather than a level 22 with an incarceration period from zero to six months.

### D. *The 2T1.3(a) Cases*

The Fourth Circuit provides the most persuasive authority in favor of the application of the lesser offense level of Guideline 2T1.3. In *United States v. Schmidt,* 935 F.2d 1440 (4th Cir.1991) the Fourth Circuit construed Guideline 2T1.3(a)(1) to determine what constituted a "tax loss." In *Schmidt,* the defendants were engaged in a scheme to sell certain trusts designed to create otherwise unavailable deductions and avoid taxes on income, by effecting "distributions" of income to a financial institution in the Marshall Islands.

The defendants were convicted on a variety of tax related offenses, none of which were charged in the indictment at issue. The defendants appealed their sentence imposed under Guideline 2T1.9(a), which is entitled "Conspiracy to Impair, Impede or Defeat Tax." Section 2T1.9(a) directs the sentencing court to Guideline section 2T1.3, the Guideline applicable to Krause, to establish a sentence, if appropriate. The government argued that the "tax loss" fig-

ure which should be applied to table 2T4.1 to arrive at the enhancement level provided for in 2T1.3(a), included the total figure for all of the gross income that the trust purchasers had listed on their trust returns. The defendants argued that figure was improperly inflated because this version of "tax loss" included income that was not understated. In other words, the government's version of "tax loss" included income that was legitimately deducted.

The Court stated that "the purpose of Section 2T1.3(a) ... is to calculate that amount of tax revenue that was not, but should have been, collected by the government" (*id.*) and held:

> "[t]he choice before us is thus between punishing a crime *whose gravity is represented by the actual loss of tax revenue to the IRS* and one whose gravity is represented by the full extent of participation in a tax evasion scheme regardless of the tax consequences to the government. *A fair reading of the Section 2T1.3(a) supports only the former ....* In our view, then, the understated gross income here is represented only by non-legitimate deductions and any income 'distributed' offshore.... We remand the case for a recalculation of all of the appellants' base offense levels consistent with our view of the *actual tax* loss sustained by the government ..." (last emphasis in original) (*Schmidt, supra,* at p. 1451) (emphasis supplied).

This case is apparently the only reported decision directly interpreting an element of the Guideline now being considered by this Court.

In *United States v. Brinson,* Nos. 90–CR–235–1, 90–CR–235–2, 1991 WL 235925, 1991 Dist. LEXIS 15715 (N.D.Ill. Oct. 30, 1991) the defendants were convicted of conspiring to defraud the United States in violation of 18 U.S.C. § 371, by impairing, impeding and obstructing the lawful functions of the IRS in the collection, computation and assessment of taxes.

The Court noted that count one of the indictment actually charged that the purpose of the conspiracy was to evade personal income taxes. This charge, coupled with the allegation of direct underreporting of corporate income, was an offense "committed in order to facilitate the evasion of taxes" (*Brinson, supra* 1991 WL 235925 at *8 n. 8, 1991 Dist. LEXIS 15715 at *21 n. 8). *Brinson* supports the view that an actual charge of, or link to, some act related to *evasion* is necessary to invoke Guideline 2T1.3(a)(1).

In *United States v. Rose,* No. CR–1–90–44, 1990 Dist. LEXIS 8629 (S.D. Ohio, July 19, 1990) the Southern District of Ohio applied 2T1.3(a)(1), since it was clear that the defendant pleaded guilty to committing offenses in order to facilitate the evasion of federal income taxes.

## E. The Fraud—Theft "Loss" Dichotomy

The defendant's legal advisor cites two cases which analyzed the method under which a "loss" should be determined for sentencing purposes when the loss derives from a crime involving fraud, rather than theft. The cases do not apply Guideline 2T1.3(a), but their reasoning is informative.

In *United States v. Kopp,* 951 F.2d 521 (3d Cir.1991), in a lengthy discussion, the Court considered the distinctions between theft and fraud based crimes and their respective impact on sentencing. In *Kopp,* the defendants defrauded a bank of the proceeds of a $13.75 million dollar loan. However, the bank eventually realized a profit on the transaction because the loan was collaterized and the bank sold the security for more than the amount of the fraudulently obtained loan. The District Court sentenced the defendant pursuant to Guideline 2F1.1 and was required to determine the amount of the "loss" in the transaction. The defendant argued that the loss was zero, because the bank did not lose any money and the defendant did not intend to inflict any loss on the bank. Unpersuaded however, the District Court agreed with the government and found that the loss was the full amount of the fraudulently obtained loan. This finding increased the offense level by eleven, which in turn enhanced the sentence from 2 to 8 months to 30 to 37 months.

In reversing, the Third Circuit found that in determining a "loss", the trial court should have calculated the loss as the actual loss, rather than the face value of the loan. The court noted that "if a probable or intended loss that the defendant was attempting to inflict can be determined, that figure would be used if it were larger than the actual loss." At the time of sentencing, under 2B1.1 "loss" meant the "the value of property taken, damaged or destroyed" (*Kopp, supra*, at p. 528). The Court noted that while all thefts involve an intent to deprive the victim of the property taken, this is not true for all frauds. Since the loan was collateralized, it is inferable that there was no loss intended by this fraud. Furthermore, there was no permanent deprivation of property since the bank sold the collateral for a profit.

Recognizing that the theft and fraud guidelines are similar in some respects, the court found that the fraud guidelines never "endorsed sentencing the worst-case scenario potential loss" (*Kopp, supra*, p. 529). The Court ruled that in keeping with the purpose of the sentencing guideline system, which is designed to treat similarly situated defendants in a like manner, basing all fraud sentences on an "amount taken" rule without regard to actual or intended harm would frustrate that purpose.

While the *Kopp* decision contains tangentially relevant language, and seemingly lends support to Krause's position, it is not binding on this Court. Furthermore, the Second Circuit in *United States v. Brach*, 942 F.2d 141 (2d Cir.1991) has apparently taken a contrary position on this issue. In *Brach*, the defendant pleaded guilty to committing wire fraud in violation of 18 U.S.C. § 1343. He fraudulently obtained a loan in the amount of $250,000 through certain misrepresentations. The Court noted that the Second Circuit literally applies Application Note 2 to theft or embezzlement cases, basing the sentence on the value of what was taken and not on the ultimate harm suffered. The Court stated that "We see no reason to follow a different course where, as in the instant case, the loss was caused by fraud and deceit" (*Brach, supra*, at p. 143). Thus, the Court

declined to distinguish between cases involving fraud and theft or embezzlement when applying Guideline 2F1.1, as did the *Kopp* Court.

In *Brach*, the Second Circuit relied on *United States v. Cea*, 925 F.2d 56, 57 (2d Cir.1991) which ruled that a "loss" was not intended to be limited to the actual harm caused by the defendant, when the amount taken exceeded such harm caused, and *United States v. Parker*, 903 F.2d 91, 105 (2d Cir.1990), in which a sentence was properly based on the total amount of money found in a highjacked car, even though the defendants made off with only a part of money.

However, in the aforementioned Second Circuit cases there was an *actual* loss inflicted by the conduct of the defendants. In *Brach*, albeit through fraud, the defendant actually wrongfully obtained $250,000. In *Cea*, the defendant pleaded guilty to embezzlement. In *Parker*, the defendants were convicted of robbery and related offenses. Only in *Kopp* was there was an alleged wrongful and fraudulent loan, where no actual loss was inflicted.

Furthermore, the Second Circuit cases, which may differ from the principles enunciated in *Kopp*, did not involve the Guideline that this Court is now considering. In fact, the interpretation of this Guideline 2T1.3 is apparently a matter of first impression in this Circuit. Although the Second Circuit may be inclined to sentence fraud-based crimes under the theft commentaries, this case does not fall within the ambit of such precedent.

In this case, Guideline section 2T1.3 states that the sentence level is determined pursuant to Guideline section 2T4.1, which provides a table of sentencing levels which correspond to the tax loss at issue, "if the offense was committed in order to facilitate evasion of a tax; or ... a level 6 otherwise." Here the defendant was not charged with tax evasion. The defendant was not charged with creating a tax loss. Nor was the defendant charged with taking false tax credits. Furthermore, the indictment contains no such allegations and the

defendant was not convicted of tax evasion or causing a tax loss or taking a false tax credit. In fact, in this case there was no tax loss or tax evasion.

The figures stated by Krause in his tax return and forms were an obvious exaggeration and patently fictitious. No reasonably prudent tax examiner or IRS employee would have refunded 23 million dollars based on Krause's return. What the Government charged, and this defendant was convicted of, was filing a false tax return and forms, and corruptly harassing and impeding IRS employees.

Further, it is reasonable to believe that there was no actual loss intended by the defendant. Krause was angry with the persons who filed tax liens against him. In order to hurt these people, he engaged in this scheme to harass, frighten and confuse them. The whole scenario, although constituting criminal acts, was an obvious fictional device of protest. However, the Court finds that no tax loss was intended or incurred and no tax credit was intended or incurred.

### F.  United States v. Telemaque

There is another case cited by the Government, which is significant in the Court's consideration of the guideline at issue. In *United States v. Telemaque*, 934 F.2d 169 (8th Cir.1991), the defendant was involved in a tax protest scheme. The defendant was convicted, not of filing a false tax return, not of corruptly harassing and impeding an IRS employee, but of conspiring to defraud the United States. She had concocted an elaborate scheme under which she would file fraudulent tax returns, claiming a refund for money reported on a 1099 form.

The evidence established that pursuant to this scheme, fraudulent tax returns claiming refunds in excess of a billion dollars and fraudulent 1099's claiming payments of over a billion dollars were sent to the victims of the scheme, who included not only IRS employees, but a bankruptcy Judge, a congressman, the Commissioner of the Internal Revenue Service and other IRS agents and employees. The defendant played a central role in preparing and disseminating instructional materials explaining how to implement this fraud, through an organization called the American Destiny Church located in Phoenix, Arizona. After a jury trial, Telemaque was found guilty of conspiracy to defraud the United States.

The district court determined that the appropriate guideline was section 2T1.9 which is entitled "Conspiracy to Impair, Impede or Defeat Tax." Just as section 2T1.3, the guideline in this case which pertains to fraud and false statements made under penalty of perjury, section 2T1.9 also has two subdivisions, and reads as follows: "§ 2T1.9 *Conspiracy to Impair, Impede or Defeat Tax*

(a) Base Offense Level (Apply the greater):

(1) Offense level determined from § 2T1/1 or § 2T1.3, as applicable; or

(2) 10".

After a hearing, the District Court determined that under the circumstances in issue, namely, the one billion dollars plus claimed, the alternative section of the guideline applied, and the Court did not sentence based on the amount of the loss, but instead sentenced on the alternate base level of ten. This base level of ten is analogous to the "otherwise" base level of 6 applicable in this case, in that it is a "catchall" provision, providing a sentencing level when other calculated levels do not apply. After applying the base level of ten, the Court made certain increases in the offense level, in part based on Telemaque's encouraging others to violate the Internal Revenue Code (*see Telemaque, supra,* at p. 170). In addition to the enhancements, the District Judge made an upward departure of two levels "because of the extent of the intended monetary loss and disruption of the government" (*Telemaque, supra,* at p. 171).

On appeal, the Eighth Circuit stated that "we are convinced that the District Court's application of the guidelines was not clearly erroneous" (*id.* at p. 171).

*Telemaque* is a significant case, and in this Court's view, relevant to the issue in this case. The Eighth Circuit did not consider the false and obviously exaggerated figures in determining the guideline level. Instead, it applied section 2T1.9(a)(2), which contains a base level of 10, the lower level of the guideline, which is analogous to the "otherwise 6" level in this case. This Court agrees with this interpretation and will follow this reasoning in sentencing Krause.

### CONCLUSIONS

The Court concludes that Guideline section 2T1.3(a)(2), the "otherwise" section, applies to this case. It is conceded that the government suffered no actual tax loss through Krause's protest activities. In addition, Krause was not charged or convicted with tax loss or tax evasion or false tax credit.

Accordingly, it is determined that section 2T1.3(a)(2), the "catchall," level six provision, calling for a zero to six months incarceration, is the applicable guideline provision in this case.

SO ORDERED.