**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Richard M. HIRSCHFELD,**
**Defendant–Appellant.**

**No. 91–5046.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1992.

Decided May 7, 1992.

our holding that an attorney can be considered a "debt collector" exclusively on the basis of his

legal activities.

Andrew Lewis Frey, Mayer, Brown & Platt, Washington, D.C., argued (Kerry Edwards Cormier, Robert H. Bork, on brief), for defendant-appellant.

David Glenn Barger, Asst. U.S. Atty., Alexandria, Va., argued (Richard Cullen, U.S. Atty., Alexandria, Va., Dana J. Boente, Sr. Trial Atty., Charles P. Rosenberg, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., on brief), for plaintiff-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and NIEMEYER, Circuit Judges.

## OPINION

NIEMEYER, Circuit Judge:

Richard M. Hirschfeld, a lawyer, was convicted of conspiracy to defraud the IRS in violation of 18 U.S.C. § 371 (Count I of the indictment against him), conspiracy to defraud the SEC in violation of 18 U.S.C. § 371 (Count II), and aiding in the preparation of his fraudulent income tax return for 1984 in violation of 26 U.S.C. § 7206(2) (Count III). The convictions are based on a complex series of financial transactions, controlled and manipulated by Hirschfeld to create for his benefit significant tax losses and to provide him with cash flow from the illegal underwriting of a small corporation. Hirschfeld was sentenced under the Sentencing Guidelines on Count I to 36 months imprisonment and under pre-guidelines' law on Counts II and III to 36 months on each. The sentences on Counts II and III were ordered to run concurrently with each other but consecutively to the sentence on Count I. He was also fined a total of $460,000.

On appeal Hirschfeld contends that (1) Count II was barred by the applicable statute of limitations, (2) venue for Count III

did not lie in the Eastern District of Virginia, (3) the jury was improperly instructed on the "good faith" defense to the tax counts, (4) the tax fraud counts and the SEC count were improperly joined, (5) the Sentencing Guidelines were improperly applied to Count I, and (6) the district court erred in calculating the appropriate Sentencing Guideline range for Count I. After carefully considering the arguments and reviewing the record, we are satisfied that no reversible error contributed to Hirschfeld's conviction or to his sentence, and accordingly we affirm.

I

■ Hirschfeld first contends that prosecution of Count II, charging him with conspiracy to defraud the SEC, was barred by the applicable five-year statute of limitations. He argues that the last act in furtherance of the conspiracy occurred in 1984 when the public underwriting of Robotronix Corporation, which was the object of the conspiracy, was completed, and he was not indicted until November 28, 1990, over six years later.

The government contends that the object of the SEC conspiracy as alleged in Count II was to take Robotronix Corporation public, using the assistance of Stephen Goren who had been barred since 1973 from participating in such activity, and to conceal Goren's participation in the transaction and the payment to him for his participation. It maintains that, even though the underwriting was completed in 1984, acts in furtherance of disguising an improper payment to Goren, a necessary object of the conspiracy in light of Goren's suspension, took place within the five-year period before indictment. In 1986 Hirschfeld failed to report on his income tax return $2,000 received from Goren as interest on an advance of money made by Hirschfeld to Goren in connection with the underwriting. The government argues that the payment was not disclosed in order to conceal the illegal arrangement between Goren and Hirschfeld.

The government also contends that Hirschfeld decided, as a tactical matter, not to raise and did not raise the statute of limitations defense in the district court and that the defense was thus waived.

Before trial, Hirschfeld filed a "Notice of Probable Intent to Raise Statute of Limitations Defense to Counts in the Indictment" in which he stated:

2. Although Rule 12(b) does *not* include a motion addressed to the statute of limitations as being in the group of motions which "must be raised prior to trial," [ ] Mr. Hirschfeld, in an abundance of caution, hereby gives notice of his probable intent to file such motion and, further, gives notice that he does not waive any defense based on the statute of limitations.

3. The determination of whether the above-referenced motion, addressed to the issue of the statute of limitations in this case, should be filed is, at this time, premature because the defendant has not yet received the discovery in this case. Indeed, the filing of such motion may not be appropriate until the government's presentation of its case-in-chief at trial, since the motion, of necessity, may arise from the evidence.

The government filed a response, which noted that the statute of limitations defense would be waived if not preserved. Thereafter, Hirschfeld did not raise the statute of limitations defense, although he had several opportunities to do so. The defense was not included as part of his motion for judgment of acquittal or post-verdict motions, and it was never voiced during trial or argued to the district court at any time. The issue has been raised for the first time on appeal.

While counsel for Hirschfeld was obviously aware of the defense, the strategy apparently undertaken was to meet the charges of Count II head on and not suggest that "the crime may have been committed, but you got me too late." Faced at that time with the choice of strategies and the possible damage that the limitations defense might cause to a defense on the merits, it was not unreasonable for Hirschfeld to have relinquished the limitations defense because of the murky question of

whether post-underwriting conduct within the limitations period was in furtherance of the conspiracy. Having lost on the merits, however, and not having raised the limitations defense below, Hirschfeld cannot now, in hindsight, raise the defense for the first time on appeal. *See United States v. Walsh*, 700 F.2d 846, 855–56 (2d Cir.), *cert. denied*, 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983). We therefore refuse to consider whether the conspiracy continued into the five-year period before indictment.

## II

■ Hirschfeld also contends that the government did not prove that the Eastern District of Virginia was a proper venue in which to prosecute Count III, charging him with willfully aiding or assisting in, or procuring, counseling, or advising the preparation of his 1984 income tax return in violation of 26 U.S.C. § 7206(2). Hirschfeld relies on the facts that the tax return for 1984 was prepared in California, mailed from Charlottesville, Virginia (located in the Western District of Virginia), and filed at the IRS center in Memphis, Tennessee. None of these locations is within the Eastern District of Virginia.

The government points out, however, that other acts undertaken by Hirschfeld to aid and assist in the preparation of the return took place in the Eastern District of Virginia. From the Eastern District of Virginia, Hirschfeld applied for and obtained an extension to file his 1984 return which was incorporated in the return; he purportedly paid a $2.1 million judgment in the Eastern District of Virginia which turned out to be a fraudulent settlement of a sham lawsuit that formed the basis for a false tax deduction on his 1984 return; he allegedly provided assistance from the Eastern District of Virginia to a coconspirator in the preparation of a document entitled "Satisfaction of Judgment" which was attached to his return; the "Satisfaction of Judgment" referenced an agreement which was allegedly fraudulently entered into in the Eastern District of Virginia; he sent a letter from the Eastern District of Virginia to a co-conspirator's lawyer discussing a potential fraudulent lawsuit and subsequent tax deduction; he failed to disclose on Schedule B interest income from Stephen Goren which arose primarily out of actions in the Eastern District of Virginia; and he claimed allegedly false insurance and legal expenses on lines 16 and 19 of Schedule C of the return, based in part on documents that were created in the Eastern District of Virginia.

The general venue statute for crimes, as set forth in 18 U.S.C. § 3237(a), provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

■ While 26 U.S.C. § 7206(2), which is involved here, does not expressly identify where the tax violation is deemed to have occurred, the prohibitive language focuses on the conduct of any person who "aids or assists in, or procures, counsels, or advises the preparation" of a false return. Thus, any such conduct constitutes a continuation of the offense and forms a basis for establishing venue. *See United States v. Griffin*, 814 F.2d 806, 810 (1st Cir.1987). Hirschfeld reads § 7206(2) too narrowly in focusing only on where the return was prepared, mailed, and filed. The prohibition by its own terms reaches conduct which consists of *aiding* and *assisting* in the preparation of a false return. *See United States v. Nealy*, 729 F.2d 961, 962–63 (4th Cir.1984) (upholding conviction under § 7206(2) of defendant who assisted in the preparation of a false engineering report which he knew would be used to compute unjustified deductions).

Because Hirschfeld, while in the Eastern District of Virginia, participated actively in assisting and preparing his 1984 return, which he knew included fraudulent deductions, the Eastern District of Virginia was a proper venue for the prosecution of the offense.

## III

Hirschfeld next contends that his convictions on Counts I and III should be reversed because the court's instruction on "willfulness" was misleading and deprived him of the right to have his "good faith" defense adequately presented to the jury. Section 7206(2) imposes punishment for willful violations, and "willfulness," in the context of criminal income tax cases, is defined as a "'voluntary, intentional violation of a known legal duty.'" *Cheek v. United States*, —— U.S. ——, 111 S.Ct. 604, 610, 112 L.Ed.2d 617 (1991) (quoting *United States v. Bishop*, 412 U.S. 346, 360, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973)). In *Cheek* the Court held that willfulness is to be determined by a subjective standard and it therefore prohibited instructing the jury that in order to have a good faith defense, one's belief must be objectively reasonable. *Id.*, 111 S.Ct. at 610–12.

In this case, the district court's charge to the jury included the following instructions in connection with the "willfulness" requirement and the "good faith" defense:

[A]s I have told you, each of the counts in this indictment requires that the defendant have acted willfully. Willfulness requires that the government prove beyond a reasonable doubt that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty.

The defendant's conduct is also not willful if he acted through negligence, inadvertence or mistake, or due to a good faith misunderstanding of the requirements of the law.

\* \* \* \* \* \*

Now, members of the jury, the good faith—the good faith of defendant Richard Hirschfeld is a complete defense to the charge in Count One of conspiring to defraud the Internal Revenue Service and to charges in Counts Three and Four of aiding in the preparation of false income tax returns. This is because "good faith" is simply inconsistent with willfulness—with the "willfulness" required by each of those counts.

While the term "good faith" has no precise definition, it means, among other things, an honest belief, a lack of malice, and the intent to perform all lawful obligations. A person who acts on a belief or on an opinion honestly held is not punishable under the law merely because that honest belief turns out to be incorrect or wrong.

The tax laws subject to criminal punishment only those people who willfully violate those laws.

If a person acts without reasonable grounds for belief that his conduct is unlawful, it is for the jury to decide whether that person is acting in good faith in order to comply with the law, or whether that person has willfully violated the law.

A person who believes that his tax return, as prepared by his accountant, truthfully reports his taxable income and allowable deductions under the tax law acts in good faith and cannot be found guilty of willfully conspiring to defraud the Internal Revenue Service and willfully aiding in the preparation of a false tax return as is charged in Counts One, Three, and Four of the indictment. Willfulness does not mean mere negligence, or even gross negligence.

\* \* \* \* \* \*

If the evidence in the case leaves you with a reasonable doubt as to whether the defendant acted in good faith or acted willfully, you must acquit the defendant as to all counts in which such a reasonable doubt is present.

Taken as a whole, we do not think that the district court's instructions introduced reversible error. The court described subjective good faith as an "honest belief ... and the intent to perform all lawful obligations," and it amplified the definition by instructing that "[a] person who acts on a belief or an opinion honestly held is not punishable under the law merely because that honest belief turns out to be incorrect or wrong." We believe that this instruction fairly complies with the standard described in *Cheek*.

Hirschfeld complains that the district court omitted his requested clarification that a person can act in good faith "even where there are no reasonable grounds for the person's honest belief," and that omission had the tendency to confuse the jury when the court instructed that "[i]f a person acts without reasonable grounds for belief that his conduct is unlawful, it is for the jury to decide whether that person is acting in good faith." Hirschfeld argues that the district court imposed in essence a requirement of objective reasonableness, a conclusion reached on a similar instruction in *United States v. Powell,* 936 F.2d 1056 (9th Cir.1991).

While there is language in the district court's instruction that is similar to the inadequate instruction given in *Powell,* the instructions in *Powell* did not include the elaborate discussion about when a person acts in good faith. For instance, *Powell* did not contain the phrase, included by the district court here, "A person who acts on a belief or on an opinion honestly held is not punishable under the law merely because that honest belief turns out to be incorrect or wrong." We believe that the district court's later use of the word "reasonable" was not used to define "good faith," but rather to introduce the circumstances under which the jury would have to determine whether subjective good faith is to be applied. *Cf. United States v. Fowler,* 932 F.2d 306, 318 (4th Cir.1991) (concluding, in a prosecution for conversion and conveyance of unauthorized documents, that the use of "the one word 'reasonable,' in the context of which the district court spoke and in light of all the other instructions could not have misled the jury" into applying a standard of objective reasonableness).

Accordingly we conclude that the district court's charge in this case, when read in its entirety, did not instruct the jury to determine "willfulness" from an objective standard, and, therefore, we find no reversible error.

### IV

■ Hirschfeld argues that the convictions on all counts should be reversed because the SEC conspiracy count was improperly joined with the tax fraud counts. He argues that the conspiracies were separate, and joining them caused him prejudice.

Federal Rule of Criminal Procedure 8(a) permits joinder of separate offenses if they "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." We have interpreted "connected transactions" flexibly, as " 'implying a connection of logical relationship.' " *See United States v. LaRouche,* 896 F.2d 815, 830 n. 5 (4th Cir.), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2621, 110 L.Ed.2d 642 (1990) (quoting *United States v. Carmichael,* 685 F.2d 903, 910 (4th Cir. 1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983)).

In this case there were both logical and factual connections between the SEC and tax conspiracies. For example, Hirschfeld met conspirators from both conspiracies in Virginia Beach on February 3, 1984, to pay them off. He orchestrated the transfer of funds to Robert Chastain, a principal member of the tax conspiracy, who, in turn, made a $120,000 payment to Stephen Goren, a member of the SEC conspiracy, in exchange for a worthless screen play for the purpose of concealing Goren's involvement with Hirschfeld. The $120,000 payment served two purposes for Hirschfeld. It concealed a payment back from the tax conspirator and disguised a payment to the SEC conspirator for his participation in the Robotronix stock offering.

■ The district court's decision not to sever the two conspiracies for trial is reviewed by us under an abuse of discretion standard. *See LaRouche,* 896 F.2d at 830. In the circumstances of this case, we do not find that the district court abused its discretion in failing to grant the severance.

### V

■ Challenging his sentence on Count I (the tax conspiracy count), Hirschfeld argues that the district court should not have applied the Sentencing Guidelines which became effective November 1, 1987, because

the conduct occurred at the latest in March 1986 when Hirschfeld filed his 1984 tax return. This was some eight months before the effective date of the Sentencing Guidelines. The government contends that the conspiracy, which included conduct of Hirschfeld's coconspirators, extended well into 1989.

Count I alleges that Hirschfeld conspired with Robert Chastain and others to defraud the IRS by creating a $2.1 million false income tax deduction claimed by Hirschfeld on his 1984 return. The $2.1 million deduction was claimed because of the payment of that sum by Hirschfeld to Chastain in a fraudulent settlement of a sham law suit. In an attempt to have the transaction withstand tax scrutiny, an object of the conspiracy, Hirschfeld claimed the deduction, and therefore Chastain believed he had to report the income. Because Chastain, a coconspirator, did not file his 1984 tax return until June 1989 when he reported the $2.1 million as an income item attributable to the fraudulent settlement with Hirschfeld, his conduct in furtherance of the conspiracy occurred during the period when the Sentencing Guidelines were applicable. The district court was thus not in error in applying the Sentencing Guidelines when sentencing Hirschfeld on Count I.

## VI

■ Finally, Hirschfeld contends that the district court erred in calculating his base offense level on Count I under the Sentencing Guidelines. His principal contention is that the offense level for Count I should not have been enhanced on the basis of the amount of gross income or taxable income understated because even without the false deduction, he had no gross income in 1984 against which to apply the false deduction. He argues that the government did not sustain an "actual tax loss," and therefore his sentence should not be enhanced by the amount of the false deduction as if the government sustained a loss. *See* U.S.S.G. §§ 2T1.3, 2T4.1.

The government agrees that it did not actually sustain a tax loss for the tax year 1984. But it contends that there was evidence to reveal Hirschfeld's intent to carry forward the loss created by the deduction

to reduce taxable income in future years. It notes appropriately that the background commentary to § 2T1.3 of the Sentencing Guidelines points out that future tax loss is an appropriate consideration in evaluating the seriousness of the offense:

[I]n instances where the defendant is setting the groundwork for evasion of a tax that is expected to become due in the future, he may make false statements and underreport income that as of the time of conviction may not yet have resulted in a tax loss. In order to gauge the seriousness of these offenses, the guidelines establish a rule for determining a "tax loss" based on the nature and magnitude of the false statements made.

The situation involving future tax losses differs from that presented in *United States v. Schmidt*, 935 F.2d 1440, 1450–51 (4th Cir.1991), in which defendants were convicted of various federal tax violations arising out of a scheme to sell trusts known as Unincorporated Business Organizations (UBOs). Under the scheme, the purchasers of the UBOs transferred income from their personal tax returns to trust tax returns and diminished their taxable income by claiming otherwise unavailable deductions and by effecting distributions of income "offshore." At sentencing, the district court calculated the "tax loss" under § 2T1.3 by taking 28% of the total amount of the gross income reported on UBO purchasers' trust tax returns, despite the fact that otherwise they would have been required to report the same amount of income on their individual returns. We reversed, concluding that although the purchasers had no legitimate right to report any of their income on trust tax returns, the government did not suffer a tax loss merely because the taxpayers were reporting income on a trust return rather than an individual return. Rather, the tax loss was represented by the illegitimate deductions and by the understated gross income caused by income "distributed" to them through an off-shore institution.

In the present case the district court determined "tax loss" under § 2T1.3 by calculating 28% of the false lawsuit settlement deduction reported on Hirschfeld's return. As distinguished from *Schmidt*,

where the reporting of income on the trust return did not, and would not have, produced a loss of tax revenue, Hirschfeld's fraudulent deduction would have directly reduced the amount of tax ultimately due. Although the deduction did not produce a tax loss in the year that it was claimed, it set "the groundwork for evasion of a tax that [was] expected to become due in the future." *See* U.S.S.G. § 2T1.3, comment. (backg'd).

Thus, in determining the magnitude of the false statement, i.e. the false deduction, it was appropriate for the district judge to consider the potential loss of future tax revenue determined by a percentage of the amount of income that would be sheltered by the false deduction.

Finally, with respect to the district court's finding to enhance Hirschfeld's sentence based on his role in the conspiracy and previous criminal history, we find no error.

For all of the foregoing reasons, therefore, we affirm the judgment of the district court.

AFFIRMED.