**UNITED STATES of America**

**v.**

**Waymon L. HUNT, Appellant.**

**No. 93–3034.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 14, 1994.

Decided June 17, 1994.

Michael J. Cicero, Washington, DC, appointed by the Court, argued the cause and filed the briefs, for appellant.

Steven D. Mellin, Asst. U.S. Atty., Washington, DC, argued the cause, for appellee. With him on the brief were J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Blanche L. Bruce, Asst. U.S. Attys., Washington, DC.

Before WILLIAMS, GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Waymon Hunt was convicted of tax fraud and mail fraud in violation of 26 U.S.C. § 7206(2) (1988) and 18 U.S.C. § 1341; sentenced to 57 months' imprisonment; and ordered to pay $153,572.00 in restitution to his clients. On appeal he argues that the district court erred in its application of the United States Sentencing Guidelines, both as to the calculation of base offense level and in enhancing his sentence for using "sophisticated means" in his scheme. Perceiving no error on either score, we affirm.

## I. BACKGROUND

From 1972 to 1992 Waymon Hunt, a former Internal Revenue Service ("IRS") employee, owned and operated CWI, a District of Columbia financial and estate planning business, and falsely held himself out to be a certified financial planner. During those years he employed several individuals as financial advisors and tax return preparers. In the course of providing tax and financial advice, Hunt convinced several clients to enter into retainer agreements with CWI, in the furtherance of which he devised three "tax-favored" investments into which he deposited client funds for the purpose of defrauding both the client and the IRS of substantial sums of money.

In two of these investments, Parker Press and Print Master, he induced his investors to enter into sale/lease-back agreements where

the business purported to sell pieces of equipment to the investors to lease back to the company. Hunt would then claim investment tax credits on behalf of the investors and deductions arising from Schedule C losses. In fact, neither entity owned the equipment it purported to sell and lease back, so that the investors could not possibly be entitled to the deductions and losses. Hunt also back-dated documents with respect to these two entities to circumvent changes in the tax law so as to make the claimed credits apparently lawfully available when such was not the case.

In the third instance, Hunt induced a client to invest $10,000 in a joint venture with an entity called "Success Through Association" to purchase and rehabilitate an historic property in the District of Columbia, for the purpose of claiming a rehabilitation credit on the client's federal income tax return. In fact, contrary to Hunt's representations, the entity did not own any interest in the property. The investor would therefore receive no interest and was not entitled to the historic rehabilitation tax credit which Hunt claimed for him on his 1987 tax return.

On the basis of the scheme set forth and other fraudulent misrepresentations, Hunt was convicted of 34 counts of tax fraud in violation of 26 U.S.C. § 7206(2) and 15 counts of mail fraud in violation of 18 U.S.C. § 1341. At sentencing, the district court proceeded under § 2T1.1 et seq. of the United States Sentencing Guidelines, which pertains to offenses involving taxation. *See* U.S.S.G. § 2T1.1 et seq. (1993). Section 2T1.4, which specifically covers violations of 18 U.S.C. § 7206(2), employs the amount of "tax loss" in establishing the base offense level. That guideline, as effective at the time of sentencing, incorporated the definition of "tax loss" contained in § 2T1.3.[1] After calculating the tax loss under § 2T1.3, the sentencing court located the corresponding loss on a table set forth in § 2T4.1. Section 2T1.3 provided that "the 'tax loss' is 28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against tax." U.S.S.G. amt. 491, App. C at 334.[2]

In this case, the sentencing court treated the entire amount of Schedule C losses reported on line 14 of the taxpayers' forms 1040 prepared by Hunt as an understatement of gross income in the amount of $4,000,-846.65. Multiplying this understatement of gross income by .28, the assumed tax rate provided in the guideline, yielded a tax loss of $1,365,898.00 for the first component of the calculation. As to the second component, according to the evidence before the sentencing court Hunt had been responsible for the claiming of false credits of $1,124,402.00. The district court added this component, thus calculating a total tax loss for sentencing purposes of $2,481,300.00. Applying to that figure the table in § 2T1.4 (as effective at the time of the offense) established a base offense level of 17 for a tax loss of that amount. *See* U.S.S.G. amt. 237, App. C at 101 (former § 2T4.1(2)).[3]

The court then enhanced the offense level by adding: (1) two points because appellant derived a substantial portion of his income from his criminal acts, *see* U.S.S.G. amt. 491, App. C at 336 (former § 2T1.4(b)(1)); (2) two points because appellant used "sophisticated means" to avoid detection, *see* U.S.S.G. § 2T1.4(b)(2); and (3) two points because appellant was in the business of assisting in the preparation of tax returns, *see* U.S.S.G. amt. 491, App. C at 336 (former § 2T1.4(b)(3)). This yielded an adjusted offense level of 23. Appellant's criminal history category was (I) he had no previous criminal history, yielding a sentencing range of 46

---

1. An amendment to the guidelines has since deleted § 2T1.3 by consolidation with § 2T1.1. *See* U.S.S.G. amt. 491, App. C at 334–35.

2. This is the version effective at the time of sentencing. *See* fn. 1, *supra*.

3. The court did not employ an amended version effective on the date of sentencing because the version effective at the time of the commission of offense was less onerous. *See* U.S.S.G. § 1B1.11(b)(1) ("If the court determines the use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.").

to 57 months. Judge Greene imposed sentence within that range, 57 months.

## II. ANALYSIS

Appellant alleges error in both the calculation of the base offense level and one of the enhancements. We consider these in turn.

### A. *Base Offense Calculation*

■ As to the offense level, Hunt argues that the tax loss was improperly calculated. His argument, a sophisticated one, is not frivolous, but is ultimately unconvincing. In his view, the calculation of the tax loss for sentencing purposes should reflect only the amount of money actually lost by the government in the form of fraudulently obtained refunds or reduction in taxes paid. The calculation in this case includes amounts requested by taxpayers in forms 1040X as refunds of taxes already paid in 1983, 1984, and 1985, and for which refunds were never made. Further, the falsely claimed credits figure of $1,124,402.00 represents the amount of investment tax credit that taxpayers attempted to recover by declaration on their returns, as opposed to investment tax credits actually allowed by the government.

Appellant concedes that the calculation made by the sentencing court is consistent with tax loss as defined in the version of § 2T1.1 which was applicable to sentencing for tax evasion under 26 U.S.C. § 7201. That section of the guidelines defined "tax loss" as "the greater of: (A.) The total amount of tax that the taxpayer evaded or attempted to evade; and (B.) The 'tax loss' defined in 2T1.3." *See* U.S.S.G. amt. 491, App. C at 329 (former § 2T1.1(a)). Appellant argues that the language of that guideline makes it plain that circumstances must exist under which tax loss calculated under the primary definition of § 2T1.1, that is, "the total amount of tax that the taxpayer evaded or attempted to evade" under § 2T1.1(a)(A) differs from the amount of "tax loss" as calculated under § 2T1.3; otherwise, the requirement of "the greater of" the two would be meaningless.

Hunt's argument proceeds that if his case is one·of those in which the distinction makes a difference, then the district court's use of the calculations contemplated by § 2T1.1(a)(A) is erroneous. In that case, whatever is contemplated by § 2T1.1(a)(B), *i.e.* "the 'tax loss' defined in § 2T1.3" must govern. While the effective difference between the definition set forth above from § 2T1.3(a)(2) and § 2T1.1(A) is not self-evident, appellant suggests that logically, it should be that § 2T1.3, unlike § 2T1.1, contemplates "actual" tax loss as opposed to "attempted tax loss." Thus, in his view, the court should have omitted from the calculation of understatements of gross income Schedule C business losses claimed on the taxpayers'· returns which were greater than the taxpayers' gross income for that year, as the government could not have had an actual tax loss in that year attributable to those amounts. Similarly, he claims that tax credits not generating actual refunds were improperly counted.

In support of his approach, appellant relies on *United States v. Schmidt,* 935 F.2d 1440 (4th Cir.1991), which held that a "fair reading of section 2T1.3(a)" contemplates that "the government simply is not suffering a 'tax loss'" when the taxpayer reports his income on a trust form rather than on an individual form as part of a fraudulent scheme, and that losses calculated under § 2T1.3(a) should be consistent with "the *actual* tax loss sustained by the government." 935 F.2d at 1451 (emphasis in original). This is certainly an honest reading of that circuit's opinion in *Schmidt.*

However, the weight of authority, including the nearest analogous decision in this circuit, opposes appellant. In *United States v. Moore,* 997 F.2d 55 (5th Cir.1993), the Fifth Circuit rejected an "actual loss" argument in a case applying § 2T1.4, expressly approved the district court's use of the amount the taxpayer "attempted to evade" and looked to § 2T1.1 and its commentary for guidance. *See* 997 F.2d at 61. In *United States v. Brimberry,* 961 F.2d 1286 (7th Cir. 1992), the taxpayer made essentially the same argument Hunt advances here. She contended that the district court had improperly computed the tax loss for § 2T1.3 purposes by employing "the amount of the previ-

ously assessed tax income deficiency" of $7 million. In her view, the tax loss should have been "the amount of money the IRS could actually recover from her," or $77,000. *Id.* at 1292. The Seventh Circuit, noting that it had "found no cases holding that 'tax loss' means the amount of money that the IRS could actually recover rather than the amount of tax owed," *id.,* held that the guidelines instructions on the determination on tax loss were unambiguous. That circuit noted that § 2T1.3 and § 2T1.1 both "explicitly define 'tax loss' as the amount of tax owed to the government," and that "§ 2T1.3 defines 'tax loss' as '28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100% of the total amount of any false credits claim against tax.' " *Id.* As the definitions were unambiguous and as § 2T1.1 required the greater of the § 2T1.3 tax loss and the " 'total amount of tax that the taxpayer evaded or attempted to evade,' " the *Brimberry* court then held that the district court had properly applied the literal instruction of the guidelines. Likewise here, the district court properly followed the instructions of the guidelines, and properly established the base offense.

Furthermore, in the nearest analogous case we have previously decided, we reached a result consistent with the district court's holding in the present case. In *United States v. Dale,* 991 F.2d 819 (D.C.Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 650, 126 L.Ed.2d 607 (1993), defendants were convicted of conspiracy to evade taxes. The trial court calculated the loss under § 2T1.1 and included the concealment of certain corporate income in the returns for the year earned which, as it happened, was later properly accounted for in a subsequent return. *See* 991 F.2d at 855. Defendants contended that the trial court should have reduced their offense level by three levels under U.S.S.G. § 2X1.1(b)(2) which provides that in conspiracy cases incomplete achievement of the object of the conspiracy warrants a reduction in offense level. *See id.*

*Dale* obviously presented a different question than the one raised by Hunt. Nonetheless, in that case we affirmed, at least in part

on a basis consistent with the district court's reasoning in this case. That is, "because the record indicates that the offense would have been completed" but for events beyond the control of the complaining defendants, the district court's use of the full amount as the "tax loss" was not clearly erroneous. *Id.* at 855.

Finally, even the circuit that marked out the trail in *Schmidt* has not gone very far down it. In *United States v. Hirschfeld,* 964 F.2d 318 (4th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1067, 122 L.Ed.2d 371 (1993), the Fourth Circuit came close to cutting *Schmidt* back to its facts. In *Hirschfeld,* that court approved a district court's calculation of tax loss by determining 28 percent of the false deduction without regard to the defendant's lack of gross income in the tax year against which to apply the false deduction. *See* 964 F.2d at 324. In so doing, the circuit distinguished *Schmidt* on the basis that in the earlier case the sentencing court had "calculated the 'tax loss' " based on 28 percent of the gross income that the taxpayers reported on trust tax returns, which should have been reported on individual returns. The *Hirschfeld* panel went on to note that the use of the wrong return forms did not in and of itself, inflict any tax loss upon the government. *See id.* Thus, in the *Hirschfeld* court's restrictive reading of *Schmidt,* the tax loss in *Schmidt* should have been "represented by the illegitimate deductions and by the understated gross income" caused by the scheme at issue in that case. *Id.* at 324. Thus, not only does the *Schmidt* decision from our sibling circuit not compel us to hold the district judge's calculation of tax loss erroneous, it would not apparently compel such a result in the circuit which gave it birth.

The only other authority offered by Hunt is the decision of the Eastern District of New York in *United States v. Krause,* 786 F.Supp. 1151 (E.D.N.Y.), *aff'd,* 978 F.2d 706 (2d Cir. 1992). The *Krause* court computed the base offense level under the default provision of the then-applicable version of § 2T1.3, which mandated "a level VI" where the schedule from § 2T4.1 was inapplicable because "the offense was [not] committed in order to facili-

tate evasion of a tax." 786 F.Supp. at 1152. The district court in *Krause* reasoned that "[n]o reasonably prudent tax examiner or IRS employee would have refunded 23 million dollars based on Krause's return." *Id.* at 1157. In other words, the defendant's conduct in *Krause* actually was not a tax fraud offense. Though he filed a false return and forms, his crime actually constituted "corruptly harassing and impeding IRS employees." *Id.*

The *Krause* court cited and drew instruction from *United States v. Telemaque,* 934 F.2d 169 (8th Cir.1991), which, like *Krause,* involved a tax protest rather than a serious attempt to defraud the United States. In both *Krause* and *Telemaque,* the sentencing court drew from sources other than the tax loss provisions in applying the guidelines. It is perfectly possible that a legitimate category of exceptions to the guidelines exists for those cases in which there is no serious attempt to evade. Indeed, the language from the then-applicable version of § 2T1.3 contemplates situations in which that is the case.

The present version of § 2T1.4 provides for a base offense level of 6 "if there is no tax loss." U.S.S.G. § 2T1.4(a)(2). Section 2T1.1 contains identical language. While neither of these sections rules out the interpretation offered by appellant, neither do they rule out the interpretation followed by the district court. The district court's interpretation can be correct and still allow for the result reached in *Krause* and *Telemaque.* We see no error in the district court's calculation of the base offense level of 17.

## B. *The Enhancement for Sophisticated Means*

■ Appellant's remaining argument is that the district court erred in adding a two-point enhancement for using "sophisticated means" to avoid detection pursuant to U.S.S.G. § 2T1.4(b)(2). Appellant first argues that the court's decision to impose a sophisticated-means enhancement based on the complexities of the investment plans does not take into account the language of the guidelines, which provides an enhancement is proper where "sophisticated means were

used *to impede discovery* of the existence or extent of the offense." U.S.S.G. § 2T1.4(b)(2) (emphasis added). In appellant's view, use of sophisticated means in the underlying scheme does not constitute the use of those means "to impede discovery." In fact, appellant argues that his means were not all that sophisticated in the first instance.

We disagree for at least two reasons. The district court judge did not ignore the "impede discovery" language of the guidelines as appellant suggests, but rather found appellant's conduct to fall within it. In fact, the court expressly found that appellant's schemes were "sufficiently sophisticated that to this day neither the probation officer nor the government nor apparently [defense counsel] can figure out exactly what he did." The district court's conclusion that sophisticated means encompassed within the scheme can also constitute the sophisticated means used to impede discovery for the purposes of the enhancement is consistent with the application note to the guidelines specifying that the term "sophisticated means" "includes conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case." U.S.S.G. § 2T1.4, Application Note 3.

The commentary language is consistent with the district court's view that the guideline contemplates enhancement based on the degree of sophistication, not necessarily whether it came after the conclusion of the operative portion of the tax evasion scheme. Similarly consistent is the remaining language of the commentary to the effect that the enhancement applies "for example, where the defendant used offshore bank accounts or transactions through corporate shells or fictitious entities." *Id.* Again, the guideline does not speak in terms of *when* the use of sophisticated means occurred, but only in terms of *whether* such means were employed.

■ Whether the scheme was "sophisticated" or not is essentially a question of fact. On review "we accept the findings of fact of the district judge unless they are clearly erroneous and ... give due deference to the district court's application of the Guidelines to the facts." 18 U.S.C. § 3742(e); *see also*

*United States v. Kim,* 23 F.3d 513, 514 (D.C.Cir.1994) (district court entitled to deference on "mixed questions" of fact and law, such as whether "a given set of facts constitute 'obstruction of justice' ... or involve more than minimal planning"). Applying that standard to the present case, we find nothing clearly erroneous in either the district court's findings of fact or its application of the guidelines thereto.

■ Appellant finally contends that he is the victim of double counting. That is, he argues that the district court cannot lawfully enhance his sentence both for using sophisticated means to avoid detection pursuant to U.S.S.G. § 2T1.4(b)(2), and because he was in the business of assisting in preparation of the tax returns, under then-applicable U.S.S.G. § 2T1.4(b)(3). We see no reason why these enhancements cannot exist in the same case. It is possible for a tax preparer to conduct a simple scheme and a nonpreparer to conduct a complex one. Each separate sentencing element exists independent of the other. Hunt offers no convincing reason why a person who violates 26 U.S.C. § 7206(2) while in the business of preparing tax returns and uses sophisticated means to impede discovery of the scheme of violation should not receive both enhancements.

### III. CONCLUSION

Finding no merit in appellant's assignments of error either as to the base offense calculation or the enhancement, the judgment of the court below is

*Affirmed.*