**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert Lyle PIERCE, Defendant–
Appellant.**

**No. 92–2535.**

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 2, 1993.

Decided Feb. 18, 1994.

Donald A. Davis, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Grand Rapids, MI, for plaintiff-appellee.

Charles E. McFarland (argued and briefed), Newton Falls, OH, for defendant-appellant.

Before: JONES and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

During the 1980's, Defendant–Appellant Robert Lyle Pierce, acting on an asserted belief that the federal income tax laws were unconstitutional, avoided paying his taxes by claiming large numbers of withholding allowances and exemptions and failing to file annual tax returns. In 1992, a jury convicted and a district court judge sentenced Pierce for income tax evasion. On appeal, Pierce claims that an earlier indictment against him should have been dismissed with prejudice due to a violation of the Speedy Trial Act. Pierce also challenges two aspects of his sentencing. We affirm his conviction and sentence.

## I

■ Earlier in these proceedings, an indictment against Pierce was dismissed pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161–74. That indictment, filed in 1990, charged Pierce with three counts of income tax evasion in violation of 26 U.S.C. § 7201, one for each of the years 1985 through 1987. The district court granted his request to obtain tax information about prospective jurors, and on March 18, 1991, Pierce filed a notice indicating that he had received the requested information. Because the court did not commence a trial on the matter within seventy days of Pierce's filing of this notice, the requirements of the Speedy Trial Act were not met, see 18 U.S.C. § 3161(c)(1), and Pierce moved that the court dismiss the action with prejudice.

Acknowledging the violation of the Act, Judge Gibson dismissed the action without prejudice on August 16, 1991. In determining that the dismissal should be made without prejudice the court emphasized that: 1) tax evasion is serious; 2) the defendant's conduct contributed to the delay as he did not indicate he was satisfied with the jury information he received in March 1991, making it reasonable for the government to believe that the matter was not resolved to Pierce's satisfaction; and 3) the administration of justice and the Act would not be hampered by dismissal without prejudice, as the charges involved documentary evidence

as opposed to witness testimony that might grow stale.

On August 30, Pierce asked the court to reconsider the dismissal without prejudice in favor of a dismissal with prejudice. On October 23, Judge Gibson reversed his earlier decision and ordered a dismissal with prejudice. The court's reasoning rested on the premise that the government had shown no interest in re-prosecuting Pierce, as it had not even opposed the defendant's motion for reconsideration. Therefore, the court believed, there would be only a minimal impact on the administration of justice if it dismissed the case with prejudice.

Unbeknownst to Judge Gibson, however, the government just six days earlier, on October 17, 1991, had filed a second indictment against Pierce. The indictment charged Pierce with six counts of income tax evasion in violation of 26 U.S.C. § 7201, one for each of the years from 1985 through 1990. This second indictment was brought in the same district court as the initial indictment, but before a different judge. However, the government neglected to inform Judge Gibson it was filing the second indictment, nor did the government give any indication that it opposed Pierce's motion to reconsider during the nearly two months the motion was pending.

Informed of the new indictment when the government moved for reconsideration (of the reconsideration), Judge Gibson vacated his October 23 order on November 26. After further briefing on the matter, the court issued an Opinion and Order on January 30, 1992, dismissing the first indictment without prejudice. The court reasoned that it had predicated its October 23 ruling upon erroneous information, and it developed more fully the three reasons articulated in August for dismissing the indictment without prejudice.

On appeal, it is undisputed that a violation of the Speedy Trial Act occurred, and that the Act demands dismissal of the first indictment against the defendant. *See* 18 U.S.C. § 3162(a)(2). The question Pierce brings before us is whether the district court properly dismissed the charges without prejudice, thus allowing Pierce to be re-prosecuted for the original three years of tax evasion.

In beginning our analysis, we note that the Act enumerates three factors that trial courts must consider when deciding whether to dismiss an action with prejudice or without it: 1) the seriousness of the offense; 2) the facts and circumstances that led to the dismissal; and 3) the impact of reprosecution on the administration of the Act and upon justice. 18 U.S.C. § 3162(a). Because Congress has given specific factors to be considered, a district court that does not set forth written findings with regard to these factors has abused its discretion and will be reversed. *United States v. Taylor*, 487 U.S. 326, 336, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 (1989). If those findings are set forth, however, we apply what we have referred to as a "modified abuse of discretion standard." *United States v. Kottmyer*, 961 F.2d 569, 572 (6th Cir.1992). Under this standard, the district court's factual findings will be reversed only if clearly erroneous. *Taylor*, 487 U.S. at 336, 108 S.Ct. at 2419. However, as the judgment itself is reached by applying statutory criteria, it involves the application of law to fact and requires "more substantive scrutiny." *Id.* at 337, 108 S.Ct. at 2420. Nevertheless, the district court's judgment on how the considerations balance "should not lightly be disturbed." *Id.*

In this case, the court discussed the three statutory factors both when it originally dismissed the first indictment without prejudice and again when it reaffirmed that decision. After carefully examining the court's discussion, we find that it has acted within its discretion in choosing to dismiss without prejudice. A discussion of the three factors follows.

A) *Seriousness of the offense.* In its rulings, the district court found the offense of income tax evasion to be serious, due to the important duty to obey and the need to enforce compliance with the tax laws. The court also cited to opinions where various courts have found tax evasion and other non-violent crimes involving mendacity to be serious offenses for speedy trial purposes. *See, e.g., United States v. Wollschlager*, 588 F.Supp. 1572, 1578–79 (N.D.Ill.1984) (finding intentional filing of unauthorized withholding

allowances to be "extremely serious" under § 3162(a)(2)), *aff'd,* 782 F.2d 1045 (7th Cir. 1985), *cert. denied,* 479 U.S. 863, 107 S.Ct. 214, 93 L.Ed.2d 144 (1986).

■ Pierce argues to the contrary that the federal sentencing guidelines should be used as a barometer to determine whether or not an offense is "serious" for current purposes. He points out that under Guidelines § 2T4.1, the base offense level assigned to the evasion of $18,819 in income taxes, as alleged in the indictment, is nine. This level falls on the lower end of the Guidelines' base offense level range for all crimes, which reaches as high as forty-three.[1]

While a primary method of judging the seriousness of an offense is by comparing it to other crimes, that does not mean that a mechanical test based upon the Guidelines must be used to label an offense "serious" or "not serious." Rather, the Speedy Trial Act's requirement that courts must consider "the seriousness of the offense" simply demands that the gravity of the crime be carefully considered as a factor in deciding whether to dismiss without prejudice. There are many crimes more serious than Pierce's income tax evasion, as well as many less serious. The district court reasonably considered this factor and properly balanced it with the other factors.

■ B) *The Facts and Circumstances Leading to the Dismissal.* The lower court recognized that the delay that led to the instant Speedy Trial Act violation resulted not from prosecutorial bad faith nor from any attempt to take tactical advantage of a delay. Where there is no affirmative misconduct by either party, the court's conclusion that this second factor authorizes dismissal with or without prejudice is a matter within its discretion. *Compare United States v. Russo,* 741 F.2d 1264, 1267 (11th Cir.1984) (where neither party caused the delay, the presumption is for dismissal with prejudice) *with United States v. Arango,* 879 F.2d 1501, 1508 (7th Cir.1989) (where neither party caused the delay, the presumption is for dismissal

without prejudice), *cert. denied,* 493 U.S. 1069, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990). Though the court below took primary responsibility for the delay that led to the Speedy Trial Act violation, it stated that the defendant's conduct was a contributing factor, as the defendant only acknowledged receiving the jury information but not that he was satisfied with it. The court therefore acted within its discretion in concluding that this second factor supported dismissal without prejudice.

C) *Impact on Administration of the Act and Justice.* Finally, we turn to the impact of the lower court's dismissal without prejudice upon the administration of the Speedy Trial Act and upon the administration of justice. The court found that Pierce suffered no prejudice as a result of the delay in the case, as the prosecutorial evidence is primarily documentary as opposed to testimonial. In addition, there is no evidence here of prosecutorial misconduct that must be deterred to ensure compliance with the Act. Accordingly, we find that the court acted within its discretion in finding that this third factor supported the dismissal of the case without prejudice.

Though we hold that the court acted within its discretion in dismissing the first indictment without prejudice, we note our strong disapproval of the government's neglect in this case. The government did nothing to inform the district court that it was refiling the charges against Pierce, and indeed did not even respond to Pierce's August 30 motion for reconsideration of the dismissal. These omissions prompted the district court's reversal and subsequent dismissal of the indictment without prejudice on October 23. The court determined that the government had no interest in reprosecution and thus acquiesced in Pierce's desire to put to rest the possibility of future prosecution. To prevent this waste and confusion, all the government needed to do was to file a response to Pierce's motion asserting its opposition to the motion and plans to reprosecute Pierce.

---

1. However, the base offense level for tax evasion can range up to twenty-six depending on the amount of money involved, and Pierce would now face a base level of fifteen under 1993 revisions to § 2T4.1.

## II

The second indictment in this case alleged six counts of income tax evasion in violation of 26 U.S.C. § 7201. A jury found Pierce guilty on all counts. After a presentence report was prepared, Pierce filed objections to it and the district court held a sentencing hearing. Pierce was sentenced at a base offense level of 13, as determined by the amount of taxes evaded. The court then enhanced the sentence by two levels because Pierce used "sophisticated means ... to impede the discovery of the existence or extent of the offense." United States Sentencing Commission, *Guidelines Manual*, § 2T1.1(b)(2). With this total offense level of 15 and with no prior criminal history, an 18–24 month sentencing range was applicable. Pierce received six concurrent 21–month sentences, three years of supervised release, and a $5000 fine. Pierce challenges two aspects of his sentence: the calculation of the base offense level and the "sophisticated means" enhancement.

### A

When calculating Pierce's base offense level, the district court took Pierce's $460,214 total gross income from 1981 through 1990 and multiplied it by 28 percent to arrive at a tax loss of $128,859.92. This placed Pierce at a base offense level of 13, which applied to tax losses between $120,000 and $200,000. (Under the 1993 revisions to the guidelines, that same monetary level now mandates a base offense level of 15).

For sentencing purposes, the use of tax loss resulting from uncharged conduct is authorized by § 1B1.3, the "relevant conduct" provision of the Guidelines. For tax offenses, application note two to § 2T1.1 states that in determining a defendant's total tax loss, "all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated." While we have previously held that *civil* tax liability is not part of the underlying criminal conviction and thus cannot be taken into account in sentencing, *United States v. Daniel*, 956 F.2d 540, 544 (6th Cir.1992), the criminal conduct here is clearly part of the same course of conduct and may therefore be counted. *See United States v. Harvey*, 996 F.2d 919, 922 (7th Cir.1993) (interpreting *Daniel* to permit non-charged criminal tax loss); *United States v. Meek*, 998 F.2d 776, 783 (10th Cir. 1993) (same).

Pierce challenges the calculation on the alternative grounds that 1) the inclusion of relevant conduct predating the November 1, 1987, effective date of the Sentencing Guidelines is not allowed under the Guidelines themselves and also violates the *ex post facto* clause of the Constitution (Article I, Section 9); and 2) the inclusion of relevant conduct from before 1985 is impermissible as prosecutions for tax evasion cannot extend past the six-year statute of limitations found in 26 U.S.C. § 6531.

The challenges to Pierce's base offense calculation here are without merit. We previously have held that, where a conviction is predicated upon acts occurring after the Guidelines' effective date, enhancing a base offense level based upon relevant conduct that occurred before the Guidelines were enacted does not violate the *ex post facto* clause. *United States v. Ykema*, 887 F.2d 697, 700 (6th Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990). Additionally, conduct that cannot be prosecuted under the applicable statute of limitations can be used to determine relevant conduct, for the circuit has held that even conduct that comprised an offense for which the defendant has been acquitted may be so used. *United States v. August*, 984 F.2d 705, 713 (6th Cir.1992), *cert. denied*, — U.S. ——, 114 S.Ct. 158, 126 L.Ed.2d 119 (1993); *United States v. Moreno*, 933 F.2d 362, 374 (6th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991); *see also United States v. Lokey*, 945 F.2d 825, 840 (5th Cir.1991) (Guidelines do "not limit acts that are part of the same course of conduct or scheme or plan to the period covered by the statute of limitations.").

### B

Finally, Pierce challenges the two-level enhancement he received under § 2T1.1(b)(2) for using sophisticated means. According to the application note four to § 2T1.1:

"Sophisticated means," as used in subsection (b)(2), includes conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied, for example, where the defendant used offshore bank accounts, or transactions through corporate shells or fictitious entities.

 In reviewing factual determinations under the Sentencing Guidelines, we employ a clearly erroneous standard. 18 U.S.C. § 3742(e). The determination that a tax evasion scheme used sophisticated means generally enjoys the protection of the clearly erroneous standard, except that we review the application of the guideline to a particular set of facts *de novo*. *Cf. United States v. Morrison*, 983 F.2d 730, 732 (6th Cir.1993) (standard of review for acceptance of responsibility reduction); *United States v. Becker*, 965 F.2d 383, 390 (7th Cir.1992) (applying clearly erroneous standard to a finding of sophisticated means), *cert. denied,* — U.S. —, 113 S.Ct. 1411, 122 L.Ed.2d 783 (1993).

This was not a case of an individual who simply lied on a 1040 form. *See United States v. Jagim*, 978 F.2d 1032, 1042 (8th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2447, 124 L.Ed.2d 664 (1993). Pierce went to his employer with false information, including presenting an inapplicable IRS publication dealing with nonresident aliens in order to exempt himself from withholding; he used several mailing addresses from different IRS regional service centers to impede the IRS' discovery of him; he changed his excessive number of withholding deductions in accordance with changes in IRS regulations so as not to alert the IRS; and he directed his wife to file misleading returns. The sentencing court cited these examples in determining that, by a preponderance of the evidence, Pierce used sophisticated means. The district court did not err in doing so.

### III

For the above reasons, we AFFIRM the conviction and sentence.