25 F.3d 1051
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Palaintiff-Appellee,
v.
Francis A. KILONSKY, Defendant-Appellant.
 No. 93-3619.
 United States Court of Appeals, Sixth Circuit.
 June 3, 1994.
 
 Before: NELSON and SILER, Circuit Judges; and HACKETT, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant Dr. Francis A. Kilonsky, an osteopath, appeals his sentence for willfully making and subscribing false personal and corporate income tax returns, in violation of 26 U.S.C. Sec. 7206(1). Kilonsky argues that his sentence violated the Double Jeopardy Clause, was based on an erroneous calculation of tax loss, and was improperly enhanced for obstruction of justice. We affirm.
 
 I.
 
 2
 The tax fraud began at least in 1983, when Kilonsky deposited approximately $50,000 into the bank account of his wholly-owned medical corporation, the Kilonsky Clinic, Inc., and used approximately $49,000 in Clinic funds to pay personal expenses. He failed to report these sums as personal or corporate income. From 1984 to 1989, Kilonsky diverted large sums of money derived from the Clinic's sales of diet pills to personal use without reporting it. He also failed to report income received through cashing insurance and workers' compensation checks during that time period. Kilonsky was found guilty on four counts of willfully making and subscribing false income tax returns, in violation of 26 U.S.C. Sec. 7206(1),[1] and was sentenced to 30 months' imprisonment and one year of supervised release in May 1993.
 
 II.
 
 3
 A. Double Jeopardy.
 
 
 4
 First, Kilonsky asserts that his double jeopardy rights were violated when the district court aggregated tax losses resulting from the falsification of his personal and corporate returns in setting his offense level under USSG Sec. 2T1.1. The Double Jeopardy Clause protects against multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 717 (1969). However, Congress's definition of a statutory offense determines whether a course of conduct involves one or more distinct offenses under the statute. Sanabria v. United States, 437 U.S. 54, 70 (1978). In enacting 26 U.S.C. Sec. 7206(1), Congress made it a crime for any person to "[w]illfully make[ ] and subscribe[ ] any return ... which contains or is verified by a written declaration that it is made under the penalties of perjury, and which [the person] does not believe to be true and correct as to every material matter." Kilonsky violated Sec. 7206(1) when he made and subscribed his 1987 and 1988 personal tax returns and when he made and subscribed his 1987 and 1988 corporate tax returns, even though these violations arose out of the same pill-sales scheme. Therefore, the district court correctly aggregated the tax loss resulting from these offenses. See USSG Sec. 2T1.1, comment. (n. 7) ("If the offense involves both individual and corporate tax returns, the tax loss is the aggregate tax loss from the offenses taken together.").[2]
 
 
 5
 B. Tax loss.
 
 
 6
 Next, Kilonsky argues that the district court erred in finding a tax loss of between $500,000 and $1,000,000, based on the government's $705,100 tax-loss estimate, when it calculated his offense level. We review the district court's determination of loss for clear error. Cf. United States v. Fox, 999 F.2d 483, 485 (10th Cir.1993) (reviewing loss calculation under USSG Sec. 2F1.1). The government's loss estimate was based on the premise that diet pills sold for $1.21 each during the relevant conduct period from November 1983 to October 1989.[3] Though pills sold for less than $1.21 before December 1986 and more than $1.21 after that time, the $1.21 price figure was reasonable in light of the offsetting effect of actual pill prices and the information available to the government. See USSG Sec. 2T1.1, comment. (n. 1) (Where indirect means are used to calculate the amount of tax loss, "the guidelines contemplate that the court will simply make a reasonable estimate based on the available facts."). The government's $705,100 estimate overstated the total tax loss because it failed to account for the fact that Kilonsky's corporate tax obligation reduced his taxable personal income. See United States v. Harvey, 996 F.2d 919, 920-21 (7th Cir.1993). However, given the government's predominantly conservative methodology in estimating losses, the district court committed no clear error in finding that tax losses totaled at least $500,000, which was the dividing point on the tax table at USSG 2T4.1(K) for offense level 16.[4]
 
 
 7
 C. Obstruction of justice.
 
 
 8
 Finally, Kilonsky argues that the district court erred in imposing a two-level enhancement, under USSG Sec. 3C1.1, for obstruction of justice. We review the factual findings underlying a district court's decision to impose an obstruction of justice enhancement for clear error. See United States v. Dedeker, 961 F.2d 164, 166 (11th Cir.1992). However, the question of whether conduct constitutes obstruction of justice "turns primarily on the legal interpretation of a guideline term and is thus reviewed de novo." United States v. Sanchez, 928 F.2d 1450, 1458 (6th Cir.1991) (internal quotation omitted).
 
 
 9
 The finding that Kilonsky removed and destroyed pertinent records, or directed their removal and destruction, supports enhancement under Sec. 3C1.1. See USSG Sec. 3C1.1, comment. (n. 3) (The enhancement applies where evidence "material to an official investigation or judicial proceeding" is destroyed.). This finding was supported by evidence indicating that records stored at Kilonsky's office disappeared after they were summonsed and is not, therefore, clearly erroneous. Likewise, the district court did not err in deciding that the destruction or concealment of Kilonsky's records materially hindered the government's investigation. The government already possessed records from which it was able to estimate total unreported income. However, destruction of the additional records materially hindered the government's investigation by complicating this task. Had those records been produced, no doubt the tax loss could have been more accurately computed, maybe even in Kilonsky's favor.
 
 
 10
 Alternatively, the finding that Kilonsky perjured himself at trial supports enhancement under Sec. 3C1.1. See United States v. Dunnigan, 113 S.Ct. 1111, 1119 (1993). Kilonsky asserts that the district court did not find that he perjured himself by testifying that he cashed checks made out to the Kilonsky Clinic, Inc., as repayment for prior loans. However, the district court implicitly found that Kilonsky perjured himself when it articulated its reasons for enhancing Kilonsky's sentence. At that time, it stated that there was evidence that notes offered to establish the existence of Kilonsky's loans to the Clinic "were not written when alleged to have been written."
 
 
 11
 AFFIRMED.
 
 
 
 *
 The Honorable Barbara K. Hackett, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Two counts related to Kilonsky's 1987 and 1988 personal income tax returns; two related to the Clinic's corporate income tax returns for the fiscal years ending on October 31, 1987, and October 31, 1988
 
 
 [2]
 Kilonsky disputes the applicability of USSG Sec. 2T1.1, comment. (n. 7), because this commentary first appeared in the November 1, 1993, guideline amendments and because his offense level was calculated under USSG Sec. 2T1.3. However, the 1993 amendments consolidated Sec. 2T1.1 and Sec. 2T1.3 so that USSG Sec. 2T1.1, comment. (n. 7), now applies to the provision formerly contained in Sec. 2T1.3 under which Kilonsky's offense level was set. Moreover, the amended commentary applies in this case because it is a "clarifying rather than [a] substantive change[ ]." USSG Sec. 1B1.11(a)(2)
 
 
 [3]
 Kilonsky argues that the district court should have required clear and convincing proof of losses occurring outside the indictment period (i.e., before November 1986 and after December 1988). Due process may require an abnormally high standard of proof in cases where the sentence enhancement is so large that it "becomes 'a tail which wags the dog of the substantive offense.' " United States v. Townley, 929 F.2d 365, 369 (8th Cir.1991) (quoting McMillan v. Pennsylvania, 477 U.S. 79, 88 (1986)). However, this is not such a case
 
 
 [4]
 Kilonsky argues that the period of relevant conduct should not have included time outside the applicable six-year statute of limitations. However, "Sec. 1B1.3(a)(2) does not limit acts that are 'part of the same course of conduct or scheme or plan to the period covered by the statute of limitations.' " United States v. Lokey, 945 F.2d 825, 840 (5th Cir.1991)