### UNITED STATES of America

v.

### Grama BHAGAVAN.

### No. 3:94–CR–23.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 22, 1995.

Ruth M. Hennage, Ass't U.S. Atty., South Bend, IN, for plaintiff.

Scott L. King, Gary, IN, for defendant.

## SENTENCING MEMORANDUM

MILLER, District Judge.

Grama Bhagavan has pleaded guilty to a charge of attempting to evade income tax, and offense carrying a possible term of imprisonment for not more than five years and a fine of not more than $250,000. 26 U.S.C. § 7201. The parties agree on the amounts of unreported income, but dispute several of the matters the court must resolve in determining Mr. Bhagavan's sentencing range. The court adopts as its own findings ¶¶ 1–30, 33, and 35–77 of the presentence report.

### A. Version of Guidelines

Since the inception of the Sentencing Guidelines on November 1, 1987, U.S.S.G. § 2T1.1 has prescribed the base offense level for tax evasion. To the chagrin of those who must apply the guidelines on a daily basis, U.S.S.G. § 2T1.1 has been amended seven times in the ensuing seven years (U.S.S.G. Appendix C, amendments 224–227, 343, 408, 491), presenting this court with the need to determine, at the outset, which version of the guidelines to apply.

The court is to apply the version of the guidelines in effect at the time of sentencing, U.S.S.G. § 1B1.11, unless an amendment between the offense and sentencing works to the defendant's detriment. *United States v. Hathcoat*, 30 F.3d 913, 919 (7th Cir.1994). Because the intervening amendments work to Mr. Bhagavan's detriment, the court employs the November, 1988 version—the guidelines in effect when Mr. Bhagavan filed his 1988 tax return. *United States v. Seacott*, 15 F.3d 1380, 1386 (7th Cir.1994).

### B. Scope of Relevant Conduct

Mr. Bhagavan engaged in the course of conduct encompassing the offense of conviction from 1987 through 1991. In determining the offense level under U.S.S.G. § 2T1.1 (1988), the court must consider all "acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (1988). The parties agree on the amounts of unreported income for each of those years, but disagree as to the propriety of including the income Mr. Bhagavan failed to report in the calendar year 1987. Because the statute of limitations has run with respect to 1987, Mr. Bhagavan contends that 1987 cannot be considered in determining the base offense level.

The court disagrees with Mr. Bhagavan. In the only case Mr. Bhagavan cites for his proposition, the government did not appeal the district court's decision to exclude pre-limitations loss. *United States v. Martinson*, 37 F.3d 353, 357 n. 1 (7th Cir.1994). U.S.S.G. § 1B1.3(a)(2) (1988) requires the court to consider "all" acts and omissions that were part of the same course of conduct, not only those for which the defendant could be prosecuted in federal court. The government's inability to prosecute Mr. Bhagavan for his unreported 1987 income does not limit the directive of U.S.S.G. § 1B1.3(a)(2) (1988). Accord, *United States v. Silkowski*, 32 F.3d 682, 687–688 (2nd Cir.1994); *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir.1994). Mr.

Bhagavan's failure to report income in 1987 was part of the same course of conduct as the charged offense, and must be considered in determining his offense level.

## C.  Method of Determining Tax Loss

█  Mr. Bhagavan failed to report income from 1987 through 1991. The base offense level of U.S.S.G. § 2T1.1(a) (1988) is based not on the amount of unreported income, but rather on the "tax loss", which was defined in the 1988 guidelines as "the greater of: (A) the total amount of tax that the taxpayer evaded or attempted to evade, including interest to the date of filing of an indictment or information; and (B) the 'tax loss' as defined in § 2T1.3." U.S.S.G. § 2T1.3 (1988) defined "tax loss" as "28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against the tax. If the taxpayer is a corporation, use 34 percent in lieu of 28 percent."

During the years at issue, Mr. Bhagavan was president and the largest shareholder of Valley Engineering, Inc. *United States v. Harvey*, 996 F.2d 919 (7th Cir.1993), teaches that when a corporate manager pockets money intended for the corporation and pays no taxes on it, the Treasury loses tax dollars from the corporate taxpayer as well as from the individual manager. Accordingly, *Harvey* establishes a methodology for determining the tax loss in such cases.

Mr. Bhagavan contends that this is not such a case. Mr. Bhagavan was the president of a firm that provided engineering services, but no contractual relationship with the firm forbid him from performing engineering services as a consultant. With respect to one or two of the firm's customers, he did so. Mr. Bhagavan reasons that since he was contractually permitted to receive moneys from customers for his own services, rather than simply for the firm's services, the money should be imputed only to him (with the tax loss being computed at a 28 percent rate) and not to the firm.

Whatever Mr. Bhagavan may have been contractually free to do, however, the evidence before the court indicates that it is more likely than not that the customers whose payments Mr. Bhagavan pocketed believed they were dealing with the firm, rather than purchasing Mr. Bhagavan's consulting services. No customer has been uncovered that believed it was dealing with Mr. Bhagavan individually with respect to any of the moneys claimed to have been Valley's; no customer filed any form 1099s in conjunction with its payments to Mr. Bhagavan. With the exception of some invoices to Builders Iron Works (payments for which is not claimed to be corporate income) and possibly RB Art (which could find no invoices), these customers all were invoiced by Valley. When a customer contracts with a firm for services, the payment for those services belongs to the firm no less because the firm would have allowed its agent to contract on his own.

Further, Mr. Bhagavan reduced the sums due to Valley by amounts customers paid directly to him. As Mr. Bhagavan notes, the correlation between payments to Valley and to him is imperfect, but the court does not believe that this imperfection cuts against the finding that the payments were intended for Valley. That Mr. Bhagavan did not share all payments with Valley, or that he did not take a cut of all payments to Valley, does not mean that the payor did not intend all payments to go to Valley. The government's figures may be slightly over-inclusive, encompassing a few payments properly due Mr. Bhagavan rather than Valley. The court does not believe that such sums would exceed a few thousand dollars, certainly not enough to reduce the tax loss to $40,000, which would be necessary to affect Mr. Bhagavan's offense level.

The court recognizes that its conclusion differs from that of Mr. Bhagavan's expert. That witness, however, simply expressed dissatisfaction with the sufficiency of the evidence against Mr. Bhagavan, a question for the court rather than for witnesses, expert or otherwise. The government need only prove facts at sentencing by a preponderance of the evidence.

The court concludes that the government's position—actually, its most recent position

taken at the resumed sentencing hearing—is well-taken with respect to the corporate nature of the funds Mr. Bhagavan failed to report (except for the few payments from Builders Iron Works and RB Art). Accordingly, *United States v. Harvey* directs that the court:

1. Apply the 34 percent corporate rate specified by U.S.S.G. § 2T1.3 (1988) to the entire amount of the unreported income. Not all of the unreported income should have gone to Valley; the government concedes that the evidence is insufficient to establish that payments totalling $3,475 from Builders Iron Works and RB Art were intended for Valley. 34 percent of the remaining unreported total of $95,355 is $32,420.70, which is the tax loss with respect to the corporate taxpayer.

2. Subtract the corporate tax loss from the total and treat the remainder as an imputed dividend to the individual taxpayer. In Mr. Bhagavan's case, that produces a figure of $62,934.30, to which also must be added the $3,475 from Builders Iron Works and RB Art, then from which must be subtracted the $2,975.00 Mr. Bhagavan did report in 1987 and 1990, producing a total of $63,434.30 in unreported income to Mr. Bhagavan.

3. Apply the 28 percent individual tax rate to the imputed dividend (and the unreported non-corporate income) to determine the tax loss with respect to the individual taxpayer. 28 percent of $63,434.30 is $17,761.60.

4. Add the corporate tax loss and the individual tax loss to arrive at the total tax loss arising from the diversion of funds. In Mr. Bhagavan's case, this addition provides a figure of $50,182.30.

The tax loss is $50,182.30. The base offense level under U.S.S.G. § 2T1.1(a) (1988) is 11.

### D. U.S.S.G. § 2T1.1(b)(2)— Sophisticated Means

■ The 1988 version of U.S.S.G. § 2T1.1(b)(2) provided, "If sophisticated means were used to impede discovery of the nature or extent of the offense, increase [the offense level] by 2 levels." Application Note 6 to that guideline explained that "Whether 'sophisticated means' were employed requires a subjective determination.... An enhancement would be applied for example, where the defendant used offshore bank accounts, or transactions through corporate shells."

Mr. Bhagavan used no offshore banks or corporate shells; his methods were far less sophisticated. He asked customers to split payments between the firm and Mr. Bhagavan, then directed the office manager to change client account cards and invoices to reflect discounts or credits. The government argues that Mr. Bhagavan separated accounting responsibilities between his office manager and his tax return preparer so that the preparer had no access to invoices or client account cards. The record does not, however, indicate that Mr. Bhagavan gave instructions either to the office manager or the accountant to avoid accountant contact with the client account cards. Perhaps Mr. Bhagavan intentionally selected an accountant who would not visit the office, but the record offers no support for such a finding. The court does not believe a corporate officer's decision to use an outside accountant, rather than an office manager, as a tax return preparer is strong evidence of a scheme to avoid detection of crime.

The example of "sophisticated means" in Application Note 6 does not appear to establish a minimum or maximum degree of sophistication for purposes of the § 2T1.1(b)(2) enhancement; it is merely an example. Greater, though still less than definitive, guidance is found in the Background Note to U.S.S.G. § 2T1.1 (1988): "Although tax evasion always involves some planning, unusually sophisticated efforts to conceal the evasion decrease the likelihood of detection and therefore warrant an additional sanction for deterrence purposes," and so warrant a 2-level increase.

Mr. Bhagavan's conduct amounts to "some planning", but not to "unusually sophisticated efforts to conceal the evasion." Mr. Bhagavan did not hide money in bank accounts belonging to others or bearing arbitrary (as opposed to identifying) numbers. *See Unit-*

ed States v. Becker, 965 F.2d 383, 390 (7th Cir.1992). He did not use aliases, code names, or portable bank accounts. See United States v. Hammes, 3 F.3d 1081, 1083 (7th Cir.1993). He did not use multiple mailing addresses and change his method of lying to the IRS to avoid detection. United States v. Pierce, 17 F.3d 146, 151 (6th Cir.1994).

Mr. Bhagavan's scheme is barely distinguishable from that at issue in United States v. Kaufman, 800 F.Supp. 648, 654–656 (N.D.Ind.1992). In Kaufman, the defendant directed clients to write checks to him personally, and then directed his firm's bookkeepers to show the debt as a "write off" or used dummy deposit slips. This court found the successor provision of U.S.S.G. § 2T1.1(b)(2) to be inapplicable because the defendant's conduct, which amounted to keeping a second set of books, was not marked by the sophistication that distinguishes the examples in the commentary.

The presentence report suggests that Mr. Bhagavan's scheme was more sophisticated than a waitress's failure to report tips, which would be tax evasion in its simplest form. The court agrees, but does not agree that conduct which is not simple is "unusually sophisticated" within the meaning offered by the Background note. By virtue of involving "more planning than is typical for commission of the offense in a simple form" and "involving repeated acts over a period of time", Mr. Bhagavan's conduct would merit an enhancement for more than minimal planning, U.S.S.G. § 1B1.1, Application Note 1(f), but U.S.S.G. § 2T1.1 (1988) provides no such enhancement. The Background Note suggests the Sentencing Commission's awareness that the routine tax evasion case involves more than minimal planning, and hence something still more must be required for enhancement. The government has shown that Mr. Bhagavan engaged in "more than minimal planning", but nothing more.

Mr. Bhagavan's offense level remains at 11.

### E.   U.S.S.G. § 3B1.3—Abuse of Trust

■ U.S.S.G. § 3B1.3 (1988) provided, "If the defendant abused a position of public or private trust ... in a manner that signifi-

cantly facilitated the commission or concealment of the offense, increase [the offense level] by 2 levels." Later amendments to the commentary have narrowed its applicability, see United States v. Hathcoat, 30 F.3d 913 (7th Cir.1994), but having begun the sentencing analysis under the 1988 guidelines, the court must complete the analysis with those guidelines. United States v. Boula, 997 F.2d 263 (7th Cir.1993).

Under any version of the guidelines, however, Mr. Bhagavan's criminal activity involved an abuse and breach of trust that significantly facilitated his crime's concealment and commission. He used his managerial position to direct false entries; he used his position as president of the firm to cause customers to make out checks in Mr. Bhagavan's name. A lesser employee of the firm could not have accomplished these things, both of which significantly facilitated the scheme's success and concealment.

■ Mr. Bhagavan argues that he breached no trust placed in him by the United States, the victim of his attempt to evade taxes. The guidelines do not require that the abused trust be that of the victim; the government need only show that the accused breached a position of trust, and that the breach contributed in some substantial way to facilitating the crime. Mr. Bhagavan's conduct was a breach of the trust reposed by the shareholders who placed him in his position as president. Over the course of five years, Mr. Bhagavan rerouted into his pockets nearly $100,000 that otherwise would have served to better the firm's position and, ultimately, to better the position of the shareholders.

Accordingly, Mr. Bhagavan's offense level is increased two additional levels to 13.

### F.   Determination of Range

Mr. Bhagavan is entitled to a two-level reduction in offense level due to his acceptance of responsibility for his conduct, U.S.S.G. § 3E1.1 (1988), reducing his offense level to 11. He has no prior criminal convictions of any sort. An offender at level 11 and criminal history category I faces a sentencing range of 8 to 14 months. U.S.S.G.

§ 5A (1988). Under the guidelines in effect in 1988, an offender facing a minimum guideline range of 8 months was eligible for a sentence of imprisonment for at least 8 months or a sentence of at least 4 months' imprisonment followed by at least 4 months of community confinement.

Sentencing shall proceed as scheduled on September 7 at 9:00 a.m.

Ruth M. Hennage, Ass't U.S. Atty., South Bend, IN, for plaintiff.

Scott L. King, Gary, IN, for defendant.