**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Sik Kin WU, Defendant–Appellant.**

No. 95–3161.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1996.

Decided April 10, 1996.

Matthew L. Jacobs, Michelle A. Leslie (argued), Office of the United States Attorney, Milwaukee, WI, for Plaintiff-Appellee.

Thomas E. Brown, Kathryn A. Keppel (argued), Gimbel, Reilly, Guerin & Brown, Milwaukee, WI, for Defendant-Appellant.

Before CUMMINGS, CUDAHY and MANION, Circuit Judges.

CUMMINGS, Circuit Judge.

Sik Kin Wu and his wife were convicted of failing to pay federal income taxes on $1.4 million that they skimmed from their closely-held corporation, American Asian, Inc. ("American Asian"). The district court, based upon our decision in *United States v. Harvey*, 996 F.2d 919 (7th Cir.1993), calculated the "tax loss" to the United States caused by Wu to be $734,720. Based upon that amount and a two-level enhancement for the use of sophisticated means to impede the discovery of the offense, the court sentenced Wu to eighteen months in prison. Wu challenges that sentence.

The district court concluded that Wu had used "sophisticated means to impede discovery of the existence or extent of the offense," U.S.S.G. § 2T1.1(b)(2), and thus imposed a two-level enhancement. The Application Notes to § 2T1.1 inform us that "sophisticated means includes conduct that is more complex or demonstrates greater intricacy or planning than a routine tax evasion case. An enhancement would be applied, for example, where the defendant used offshore bank accounts, or transactions through corporate shells or fictitious entities." U.S.S.G. § 2T1.1, Application Note 4. We have dealt with this section of the Guidelines previously in *United States v. Becker*, 965 F.2d 383 (7th Cir.1992). In *Becker* the defendant attempted to obscure his financial situation by placing assets into his son's bank account and a so-called "warehouse bank." We held that those activities sufficiently demonstrated that the defendant had used "sophisticated means to impede the discovery of the nature or extent of his offense" and thus supported a two-level enhancement. Wu's activities are similar: For over seven years Wu and his wife meticulously falsified American Asian

business records; they deposited receipts into bank accounts in Milwaukee, Chicago, and Canada under their former names and those of their relatives; they provided fraudulent documents to the banks indicating that they were Canadian citizens to prevent the banks from notifying the Internal Revenue Service of the existence of the accounts or interest generated from them; and they provided incomplete and misleading information to their accountant so that he unknowingly prepared false tax returns, which they filed. These means were sufficiently "sophisticated" to warrant Wu's two-level enhancement.

■ Next, Wu challenges the tax rate that was used to determine his sentence. The Sentencing Guidelines use "tax loss" as the foundation for determining the appropriate sentence in tax evasion cases. "Tax loss" is defined as "28 percent of the amount by which the greater of gross income and taxable income was understated, plus 100 percent of the total amount of any false credits claimed against tax. If the taxpayer is a corporation, use 34 percent in lieu of 28 percent." U.S.S.G. § 2T1.3(a). In *Harvey, supra*, we held that when a person commits a single crime that causes both corporate and personal income to be understated, the situation is best viewed in three steps: (1) a corporation failing to pay taxes on profits; (2) the corporation disbursing those profits as dividends to a shareholder; and (3) the shareholder failing to pay taxes on the dividends. Thus the proper method for determining the overall "tax loss" follows a similar three-step process: (1) apply the corporate rate of 34 percent to the unreported corporate profit; (2) reduce the imputed dividend paid to the shareholder by the amount of imputed corporate taxes; and then (3) apply the personal rate of 28 percent to the reduced dividend. *Id.* at 920.[1] We provided the following example to demonstrate. A manager and principal shareholder of a corporation sells some of the corporation's inventory, producing a $100,000 profit that he diverts to his own use. This is best viewed as a dividend paid from the corporation to the shareholder. Applying the corporate rate of 34 percent produces unpaid taxes at the corporate level of $34,000. Reducing the $100,000 dividend paid to the shareholder by the amount that should have been paid in corporate tax makes the dividend $66,000. Then applying the personal tax rate of 28 percent to that figure creates an amount of unpaid personal tax of $18,480. The total of unpaid taxes, both at the corporate and personal level, is $52,480. This is the true "tax loss" that should be used in calculating the defendant's sentence. *Id.*

Wu contends that we should overrule *Harvey* because its calculation method is "unrealistic," especially in the context of closely-held corporations. He argues that in the "real world," people who own closely-held corporations seek professional tax advice and that any competent advisor tells the owner to have the corporation distribute its profits to the owner through salary, bonus, and other methods that result in the corporation owing little or no tax on its profits. This fact, Wu argues, eliminates corporate level taxation and makes the "tax loss" to the United States only the amount lost at the personal level. Thus Wu argues that he should have been sentenced based on a "tax loss" of only $392,000 (28 percent of $1.4 million), not $734,720.

■ We decline Wu's invitation to overrule *Harvey*. We agree that owners of closely-held corporations often seek tax advice and employ a variety of methods to reduce the overall tax liability of themselves and their corporations. We also agree that through such advice Wu may have been able to reduce the amount of tax liability he would have owed on the $1.4 million in question here, perhaps even to the extent that the only tax liability would be at the personal level.[2] However, sentencing under the Guidelines "is not a duplicate of the calcula-

---

1. A mathematical short-cut to this three-step method is to simply multiply the amount of understated income by 52.48 percent.

2. We note, however, that because a corporation may only deduct a "reasonable" amount of sala-

ry, 26 C.F.R. § 1.162–7(a), it is not certain whether the money at issue would have even been deductible if paid to Wu as a salary or bonus.

tion in civil proceedings; the Guidelines often use rough-and-ready calculations to curtail complexity." *United States v. Sung,* 51 F.3d 92, 95 (7th Cir.1995); Section 2T1.3(a) requires such a rough-and-ready calculation. *Harvey,* 996 F.2d at 920. The method suggested by Wu would make it the responsibility of the United States Courts to comb the books of convicted tax evaders seeking ways in which they could have lowered their tax liability and their sentences. Unfortunately for Wu, it is simply not our role to play "Monday Morning Tax Advisor."

Judgment Affirmed.