UNITED STATES of America,
Plaintiff–Appellee,

v.

Charles I. FRIEND, Defendant–Appellant.

No. 96–1616.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1996.

Decided Jan. 10, 1997.

Barry Rand Elden, Chief of Appeals, Patrick Collins (argued), Office of United States

Attorney, Criminal Appellate Division, Chicago, IL, for plaintiff–appellee.

Charles K. Piet (argued), Chicago, IL, for defendant–appellant.

Before CUMMINGS, EASTERBROOK and ROVNER, Circuit Judges.

CUMMINGS, Circuit Judge.

On November 30, 1995, defendant Charles Friend pled guilty to impeding and obstructing the administration of the Internal Revenue Code in violation of 26 U.S.C. § 7212(a). In the district court the government sought sentencing enhancements for the defendant's use of sophisticated means to impede the discovery or existence of the offense under U.S. Sentencing Guideline § 2T1.4(b)(2) and for defendant's obstructive conduct under U.S. Sentencing Guideline § 3C1.1. On February 27, 1996, the district court sentenced the defendant to a 14–month prison term, imposing a two-level sentencing enhancement for use of sophisticated means and a two-level enhancement for obstruction of justice, in each case over defendant's objection.

Defendant challenges the district court's imposition of these enhancements. We affirm.

I.

Friend was an accountant who prepared tax returns and served as a tax preparer for a fee. Between January 1991 and September 1994, the defendant prepared and filed or caused to be filed in the names of various individuals a number of false and fraudulent tax returns, which claimed refunds to which the taxpayers were not entitled. The defendant did not sign his name as a paid tax preparer on most of these returns in order to conceal from the IRS his identity and his fraudulent actions. For his services, the defendant charged a fee equal to a portion of the fraudulent refund claimed.

From time to time the defendant would seek out his friend and co-schemer Delbert Pryor to request Pryor to access IRS computer records in order to determine the status of fraudulent claims for refunds the defendant had prepared for the benefit of himself and his clients and to expedite those refunds. From 1986 through most of 1994, Pryor was employed by the IRS as a problem resolution officer, and in that capacity Pryor had access to taxpayer returns, which he was prohibited by law from disclosing.

The defendant's scheme began to unravel when an undercover IRS agent sought his help in preparing tax returns for the tax years 1991–1993. After initially preparing correct returns, the defendant proposed to the IRS agent that he prepare returns based on false information to increase her refund substantially. The IRS agent agreed, and the defendant prepared and caused to be filed fraudulent tax returns. The defendant asked for Pryor's assistance in expediting the refunds, and Pryor, among other things, illegally accessed the IRS agent's tax accounts on the IRS computers. Pryor was paid a portion of the defendant's fees on the transactions.

In April 1993, one of Friend's clients ("Client B") was approached by the IRS regarding her 1992 tax return, which had been prepared and filed, but not signed, by the defendant. When the defendant learned that the IRS had contacted Client B, he advised her not to disclose his name to the IRS as the paid preparer of her false return. Later that month, after several other clients of the defendant had been approached by the IRS in connection with their returns, he contacted Pryor and arranged a meeting with several clients to discuss their responses to the IRS inquiries. At the meeting, the defendant introduced Pryor as an IRS employee, and Pryor advised the clients to tell the IRS that each of them had prepared his or her own return. Immediately after that meeting, Pryor and the defendant drove to Client B's home, where Pryor introduced himself as an IRS employee and advised her not to disclose the defendant's name as the person who had prepared her tax return.

In November 1993, the defendant asked Pryor to obtain confidential information improperly from IRS computer files on a former Chicago Bears football player. The information was sought on behalf of the ex-wife of the player, who was then involved in a divorce-related proceeding. Pryor provided

the defendant with the current address and yearly income of the taxpayer, and the defendant turned it over to a friend of the ex-wife.

After these events and after learning that he was under investigation, the defendant began to co-operate with the government, providing information on numerous occasions that ultimately led to the indictment and conviction of Pryor. As part of the defendant's plea agreement, the government agreed to make known to the district court the extent of his co-operation and to move for a downward departure from the applicable sentencing guideline range pursuant to U.S.S.G. § 5K1.1.

## II.

The defendant first asserts that the district court erred by increasing his base offense level by two points for the use of sophisticated means, arguing that he did not use sophisticated means either in the commission or concealment of his offense. Second, the defendant challenges the court's imposition of a two-level increase for obstruction of justice, maintaining that the record fails to support that enhancement, that the enhancement duplicates the enhancement for use of sophisticated means, and that the element of obstruction is a requisite element of the underlying substantive offense. Each argument will be addressed in turn.

## A.

■ The district court's finding that the defendant employed sophisticated means to impede the discovery of the existence and the extent of his criminal conduct is a factual one reviewed by this Court for clear error. See *United States v. Hammes,* 3 F.3d 1081, 1083 (7th Cir.1993). Under this standard of review, we accord "great deference" to the district court's finding and reverse it only if a review of the record demonstrates a "definite and firm conviction that a mistake has been committed." *United States v. Hickok,* 77 F.3d 992, 1007 (7th Cir.1996), certiorari denied, —— U.S. ——, 116 S.Ct. 1701, 134 L.Ed.2d 800 (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518).

■ Under U.S. Sentencing Guideline § 2T1.4(b)(2), "[i]f sophisticated means were used to impede discovery of the existence or extent of the offense, increase [the offense level] by 2 levels." The application note following § 2T1.4 defines "sophisticated means" as:

> conduct that is more complex or demonstrates greater intricacy or planning than a routine tax-evasion case. An enhancement would be applied, for example, where the defendant used offshore bank accounts or transactions through corporate shells or fictitious entities.

The presentence investigation report before the district court recommended an increase under this Guideline based on the defendant's failure to sign the fraudulent tax returns in order to conceal his identity and on the defendant's bribery and co-option of an IRS employee.

Apparently believing that the application note for § 2T1.4 sets forth an exclusive list of activities constituting "sophisticated means," the defendant points out that he did not use any creative banking or financial methods, or create fictitious or fraudulent corporate entities, nor did he deal with offshore or international institutions to accomplish the instant offense, citing *United States v. Hunt,* 25 F.3d 1092 (D.C.Cir.1994). The defendant asserts, without citation, that the facts of this case do not rise to the level of sophistication contemplated by U.S.S.G. § 2T1.4(b)(2).

The government responds, and the district court appears to have agreed, that the defendant's conduct in this case constituted sophisticated means because he befriended, co-opted and repeatedly bribed a well positioned IRS employee to participate in the scheme, thereby providing insurance against detection. This activity, the government argues, along with the fact that the defendant prepared and filed numerous fraudulent tax returns for his clients without signing the return as a paid tax preparer, is at least as sophisticated a means of executing his scheme as using offshore bank accounts or fictitious entities.

■ The defendant's assertion that his conduct does not constitute sophisticated means because it did not involve creative banking or financial methods is without merit. This Court has recently addressed the type of conduct necessary to meet the sophisticated means enhancement threshold in *United States v. Wu*, 81 F.3d 72 (7th Cir. 1996). In *Wu*, we affirmed the district court's finding of sophisticated means in connection with a conviction for failure to pay federal income taxes, noting that the defendants meticulously falsified their company's business records; provided fraudulent documents to banks in order to prevent the banks from notifying the IRS about the existence of their accounts; and provided incomplete and misleading information on their tax returns. *Id.* at 73–74. See also *United States v. Clements*, 73 F.3d 1330, 1340 (5th Cir.1996) ("Even though [the defendant's] transactions did not involve the use of offshore bank accounts or fictional entities, his use of multiple cashier's checks and his wife's separate bank account to obscure the [offense] undeniably made it more difficult for the IRS to detect his evasion," and therefore a sophisticated means enhancement was not clearly erroneous.). The list of activities in the application note to § 2T1.4 is clearly not an exhaustive list of activities constituting sophisticated means. And as the D.C. Circuit emphasized in the case cited by the defendant, *Hunt*, 25 F.3d at 1097–1098 (1994), the determination that a defendant used sophisticated means in the commission of his offense is a finding of fact, reviewed for clear error.[1] This Court cannot say that the district court's determination that the defendant used sophisticated means is clearly erroneous.

### B.

■ The defendant next challenges the district court's assessment of the obstruction of justice enhancement. As with the sophisticated means finding, the district court's finding that the defendant's conduct constituted obstruction of justice is a factual one to be reviewed for clear error. See *Hickok*, 77 F.3d at 1007.

Under U.S. Sentencing Guideline § 3C1.1, "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels." The application notes following § 3C1.1 provide a list of examples of the types of conduct to which this enhancement applies, and that list includes "threatening, intimidating, or otherwise unlawfully influencing a ... witness ..., directly or indirectly, or attempting to do so."

■ The defendant sets forth three arguments in support of his claim that the obstruction of justice enhancement was unjustified. First, he argues that the record fails to support such an enhancement because the purpose of his conduct was not a deliberate pre- or post-arrest attempt to frustrate or impede an ongoing criminal investigation. Rather, the defendant argues, his conduct occurred before he knew he was under investigation and was a "natural attempt to avoid apprehension, [and] not a willful attempt to impede or obstruct justice...." *United States v. Stroud*, 893 F.2d 504, 508 (2d Cir.1990). Therefore, he concludes that the obstruction of justice enhancement does not fall within the language or spirit of § 3C1.1. Next, the defendant claims that this enhancement duplicates the sophisticated means enhancement discussed above, and is therefore improper under *United States v. Lallemand*, 989 F.2d 936, 939 (7th Cir.1993). Finally, he asserts that the element of obstruction is a requisite element of the underlying substantive offense, and thus the obstruction of justice enhancement should not be imposed, citing *United States v. Werlinger*, 894 F.2d 1015, 1017 (8th Cir. 1990), and the application notes following U.S.S.G. § 3C1.1.

The defendant's first argument may be disposed of by pointing out that both the

---

**1.** The defendant's citation to *Hunt* is completely unavailing. Nothing in the *Hunt* opinion says that conduct like that engaged in by the defendant in the instant case is not sophisticated means. The D.C. Circuit only states that the sophisticated means enhancement *does* apply to conduct like the use of offshore bank accounts or corporate shell transactions. 25 F.3d at 1097.

application notes to § 3C1.1, as described above, and this Court's case law make clear that improperly attempting to influence a witness (including by counseling a potential witness to make false statements to investigating authorities) indeed qualifies as obstruction of justice under U.S.S.G. § 3C1.1. See *United States v. Ross*, 77 F.3d 1525, 1534–1535, 1549–1550 (7th Cir.1996); *United States v. Wright*, 37 F.3d 358, 361–362 (7th Cir.1994); *United States v. Robinson*, 14 F.3d 1200, 1203–1204 (7th Cir.1994); *United States v. Cherif*, 943 F.2d 692, 703 (7th Cir. 1991), certiorari denied, 503 U.S. 961, 112 S.Ct. 1564, 118 L.Ed.2d 211. Whether the defendant knew that he was under investigation at the time of such improper influencing is irrelevant for purposes of § 3C1.1. See *United States v. Schmidt*, 47 F.3d 188, 192 n. 3 (7th Cir.1995).[2]

The defendant's second argument is also without merit, although the defendant is correct that double counting generally is not permitted under the Guidelines. See *United States v. Austin*, 54 F.3d 394, 403 (7th Cir. 1995). The district court specifically omitted from its consideration of the applicability of the sophisticated means enhancement the obstructive conduct that formed the basis for the obstruction of justice enhancement—*i.e.*, the defendant's conduct with respect to Client B. Therefore, separate conduct formed the basis for each enhancement.

This Court simply disagrees with the defendant's argument that the conduct underlying his obstruction of justice enhancement is a requisite element of his underlying substantive offense. When the defendant advised Client B not to disclose his identity or

co-operate with investigators, the defendant was not performing an act without which all elements of the underlying offense could not be demonstrated. Even without this activity, the defendant's plea agreement set forth a broad-based scheme to impede the due administration of the Internal Revenue Code pursuant to § 7212(a). The defendant's argument therefore must fail, given his flawed premise.[3]

In light of the foregoing, the district court's assessment of the obstruction of justice enhancement was not clearly erroneous.

### III.

For the reasons discussed above, the decision of the district court is AFFIRMED.

---

**2.** *United States v. Stroud*, 893 F.2d 504 (1990), cited by the defendant, does not lead this Court to a contrary result. In that case, the Second Circuit found that a defendant's flight immediately following the commission of a crime, without more, does not support an obstruction of justice enhancement. 893 F.2d at 507. However, the court rested its result on the requirement in § 3C1.1 that a defendant must act "willfully" to obstruct the administration of justice. *Id.* The defendant in the instant case does not argue that his conduct with respect to Client B was not willful. Therefore, Stroud is simply not relevant.

**3.** In addition, *United States v. Werlinger*, 894 F.2d 1015 (1990), cited by the defendant in support of

his argument, is distinguishable from the present case. The Eighth Circuit in *Werlinger* did not base its decision on the fact that the element of obstruction is a requisite element of the underlying substantive offense (in that case, embezzlement), as the defendant argues. Instead, the court held that where the obstructive conduct took place during an investigation by the defendant's employer *prior* to the time law enforcement authorities were even contacted, the § 3C1.1 enhancement was not applicable because the conduct did not occur "during the investigation or prosecution of the offense," as required by § 3C1.1. *Id.* at 1016–1017.