151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jerry THOMAS, Jr., Defendant-Appellant.
 No. 97-3849.
 United States Court of Appeals, Seventh Circuit.
 Argued July 8, 1998.
Decided July 20, 1998.
 
 Appeal from the United States District Court for the Northern District of Indiana, Hammond Division. No. 2:97-CR-19-1, Rudy Lozano, Judge.
 Before Hon. JESSE E. ESCHBACH, Hon. JOEL M. FLAUM, and Hon. ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 Jerry Thomas pleaded guilty to receiving five firearms while being a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924, and, traveling in interstate commerce with the intent to engage in the business of dealing in firearms without a federal license, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 924(m). At sentencing, the district court found that Thomas had been involved in dealing at least 25 firearms, based on grand jury testimony of an accomplice, testimony of an ATF agent, and Thomas's own statements. Accordingly, the district court increased Thomas's base offense level by five levels under U.S.S.G. § 2K2.1(b)(1)(E), and sentenced him to 120 months' imprisonment. On appeal, Thomas argues that the district court erred in holding him responsible for at least 25 firearms as relevant conduct.
 
 
 2
 Since Thomas is a convicted felon he was prohibited from purchasing firearms. See 18 U.S.C. §§ 922(g)(1), 924. Thomas, therefore, gave Kenneth Mensah money to purchase guns for him. On December 10, 1996, Thomas met Mensah and gave him $500 to purchase as many firearms as the money would permit. The two then drove in Mensah's car to a firearms dealer in Indiana. Thomas and Mensah went into the gun shop together and Mensah filled out the paper work and purchased five semi-automatic handguns. Unbeknownst to them, they were under ATF surveillance. While under surveillance, the two men left the gun shop and returned to Thomas's car where Thomas transferred the handguns to the truck of his car. Thomas then drove to a bar and went inside. When Thomas left the establishment, his car was being towed. He approached the car, stated it was his, and was arrested for being a felon in possession of a firearm. Upon searching the car, ATF agents recovered five handguns and ammunition from the trunk of the car and an Astra semi-automatic pistol from the center console of the passenger compartment of the car. Thomas was wearing an empty holster for the Astra.
 
 
 3
 After his arrest, ATF Agent Todd Reichert advised Thomas of his rights and Thomas signed a waiver of his Miranda rights. Thomas then gave a statement to Agent Reichert, detailing his involvement in the gun purchases. Specifically, Thomas admitted that he had purchased at least 25 firearms and that he sold those firearms on the streets of Chicago. Agent Reichert put the statement into written form. Thomas reviewed the statement, made and initialed corrections, but when Agent Reichert asked Thomas to sign the statement, Thomas refused.
 
 
 4
 At the detention hearing, Thomas testified that before his arrest he had gone to a bar and had several drinks, and that he was intoxicated when he talked to Agent Reichert. Thomas denied making the statements concerning prior gun purchases, and claimed to remember very little about the events of the day because of his intoxicated state. However, at Thomas's sentencing hearing, Agent Reichert testified that he observed no signs of intoxication and that Thomas could not have been so intoxicated as to forget the events of that night.
 
 
 5
 When Mensah was arrested for his involvement in the criminal activity, he provided a complete confession to the ATF agents. Additionally, he testified before a grand jury that he had purchased at least 65-70 guns for Thomas between October 1996 and December 10, 1996. That testimony was introduced at Thomas's sentencing hearing.
 
 
 6
 After reviewing Thomas's statement, Agent Reichert's testimony, and eliciting arguments from counsel, the district court found that when Thomas gave a detailed statement to Agent Reichert, he was "fully coherent and knowledgeable and in control of his facilities." Based on this, Mensah's grand jury testimony and Agent Reichert's testimony at sentencing, the district court determined that Thomas's was responsible for at least 25 firearms.
 
 
 7
 The district court's decision to attribute at least 25 firearms to Thomas is a finding of fact, reviewed for clear error. See United States v. Lindsey, 30 F.3d 68, 70 (7th Cir.1994). Under this standard of review, we give "great deference" to the district court and will reverse only if we are left with a "definite and firm conviction that a mistake has been committed." United States v. Friend, 104 F.3d 127, 129 (7th Cir.1997) (internal quotations and citations omitted). Because the district court's decision to attribute 25 weapons to Thomas occurred during sentencing, the district court had to find that Thomas possessed those weapons only by a preponderance of the evidence. See Lindsay, 30 F.3d at 70.
 
 
 8
 On appeal, Thomas argues that the district court erred in increasing his offense level by five levels for possession of at least 25 firearms. Thomas argues that the evidence the district court relied upon to enhance his sentence under U.S.S.G § 2K2.1(b)(1)(E) failed to meet the minimum standards of reliability. Although Thomas concedes that the district court has the authority to look beyond the offense of conviction to determine his offense level, he contends that his statement given to Agent Reichert is inherently unreliable because of his alleged intoxication, and that Mensah's testimony should be discounted because of its self-serving nature and uncorroborated estimation of the number of weapons involved. Thomas argues that his own statements and Mensah's testimony lacked sufficient indicia of reliability to support the sentence enhancement Thomas received. Instead, Thomas argues, the district court should have sentenced him based on the six weapons found in his possession when he was arrested because that is the only number of weapons that is uncontested.
 
 
 9
 As the Supreme Court noted, credibility determinations "can virtually never be clear error." Anderson v. Bessemer City, 470 U.S. 564, 575, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). This court, on several occasions, has made it clear that the testimony of one witness, "even one arguably biased against the defendant, is sufficient to support a finding of fact." Lindsay, 30 F.3d at 70-71 (internal quotations and citations omitted). Not only did the district court have Mensah's grand jury testimony concerning the number of guns that Thomas dealt, but Thomas's own statements concerning the number of guns he was responsible for. Both of these statements support the finding that Thomas was responsible for at least 25 firearms. The only evidence Thomas offered to rebut Mensah's and Agent Reichert's testimony, as well as his earlier statements, were his subsequent self-serving statements made at his detention and sentencing hearings. The court was free to assess Thomas's, Mensah's, and Agent Reichert's credibility as witnesses and to reject Thomas's testimony in light of the other evidence presented. See Anderson, 470 U.S. at 575; Mlsna v. Unitel Comm., Inc., 91 F.3d 876, 880 (7th Cir.1996). Under such circumstances, it cannot be said that the district court clearly erred by finding that the government proved by a preponderance of the evidence that Thomas had unlawfully possessed at least 25 firearms for the purposes of U.S.S.G § 2K2.1(b)(1)(E). See Anderson, 470 U.S. at 575-76. Therefore, Thomas's sentence is
 
 
 10
 AFFIRMED.